457 P.2d 439

D & M DEVELOPMENT COMPANY, Inc., Plaintiff-Respondent,

v.

SHERWOOD AND ROBERTS, INC., Defendant-Appellant.

No. 10366.

Supreme Court of Idaho.

July 8, 1969.

Rehearing Denied Aug. 18, 1969.

---

Racine, Huntley, Herzog, Olson & Zener, Pocatello, for appellant.

Thomas A. Miller, of Hawley, Troxell, Ennis & Hawley, Boise, amicus curiae.

Baum & Peterson, Pocatello, Thomas A. Olson, of Landol, Gary & Olson, Bozeman, Mont., for appellee.

SHEPARD, Justice.

The sole question of law presented by this appeal is whether a "commitment fee" or "brokerage fee" is to be defined as interest when it is contended that a lending arrangement carries interest in excess of the maximum permitted by our statute and is therefore usurious. We hold that such a fee does not constitute interest.

In this case extensive interrogatories, affidavits and depositions were taken, filed, and are a part of the record from the court below. Both parties filed motions for summary judgment stating that there were no material issues of fact for decision by the trial court. The trial court agreed and granted summary judgment in favor of respondent and in addition thereto filed extensive findings of fact.

Because of our holding, the details of the transaction must be examined and set forth at some length. Respondent D & M Development Company was engaged in the promotion and anticipated construction of a shopping center in Pocatello, Idaho. In December of 1964 a certain parcel of land located in the center of the project was about to be sold to third parties and the success of the entire project required the immediate obtaining of capital necessary to purchase that parcel and other necessary parcels. Approximately $250,000 was needed for the land acquisition.

Officers of the respondent ascertained that Sherwood and Roberts, Inc., of Walla

Walla, Washington, held a second mortgage on the crucial parcel of land. An officer of the respondent contacted the Walla Walla firm in the hope of obtaining capital. As a result of that contact an officer of the Walla Walla firm met with the officers of respondent in Pocatello. He suggested to the respondent an overall financing package, which included not only the capital for the immediate land acquisition but also an interim construction loan to be superseded and followed by a permanent loan. Roy Miller, Sr., Vice President of the respondent, stated repeatedly that he felt that he had been confronted with a take it or leave it three loan package. The President of the Walla Walla firm, however, denied that the acceptance of the two large construction loans was a condition precedent to the granting of the land acquisition loan. In any event, respondent authorized the Walla Walla firm to obtain commitments for all three of the loans under certain terms.[1]

On December 18, 1964, respondent executed a promissory note for $306,000, payable January 1, 1966, bearing interest at 8%. The note was secured by the parcels of land to be purchased and by the deposit of securities owned by Mr. and Mrs.

1.

"Sherwood & Roberts, Inc.
106 N. Second Avenue
Walla Walla, Washington

Subject: Westwood Village Shopping Center
Pocatello, Idaho

Gentlemen:

This is your authorization to arrange loan commitments for our account for the purpose of financing the development of Westwood Village Shopping Center in Pocatello, Idaho. These loan commitments shall cover three loans:

1. Permanent Loan: $1,650,000—6%—26 years, amortized monthly
2. Construction Loan: $1,650,000—6¼%—1 year term
3. Land Loan: $306,000—8%—1 year term

In consideration of your obtaining written commitments for all three loans, which are accepted by us, we hereby agree to pay you for your services a brokerage fee of $56,250.00.

The payment of the brokerage fee of $56,250.00 shall be made to you at the time the first of these three loans is closed and we hereby authorize the lender or lenders making such loans to pay said brokerage fee from the loan proceeds in accordance with the provisions hereof, and have executed an extra copy of this authorization for delivery to said lender or lenders.

Yours very truly,

/s/ Roy F. Miller, Sr.
    Roy F. Miller, Sr.

Dated: Dec. 16, 1964

/s/ Roy F. Miller, Jr.
    Roy F. Miller, Jr.

/s/ Kenneth E. Douglass
    Kenneth E. Douglass

D & M DEVELOPMENT CO., INC.

By /s/ Kenneth E. Douglass, President

By /s/ Roy F. Miller, Sr.
       Secy-Treas."

Roy F. Miller, Sr., which were listed on the New York Stock Exchange and had a then market value of $75,000. The loan evidenced by the note was made by the appellant in this action, Sherwood and Roberts, Inc., which is an Idaho subsidiary of the Walla Walla corporation. Respondent actually received only $249,750. The remaining $56,250, called at various times a "brokerage fee" or a "commitment fee," was distributed $15,000 to Sherwood and Roberts, Spokane, Inc., and $41,250 to Sherwood and Roberts, Northwest, Inc., both of which corporations are subsidiaries of Sherwood and Roberts, Inc., of Walla Walla, Washington. The respondent used the net sum of $249,750 to acquire the necessary lands. The court below disregarded the various separate corporate entities which appear to comprise the totality of the Sherwood and Roberts, Inc. operation. We express no opinion on such treatment since our ultimate conclusion is unchanged in either event. For convenience, our reference herein will be to Sherwood and Roberts as a whole.

The controversy in this matter stems from the $56,250 referred to as "brokerage" or "commitment" fee, and the function that charge has in the transaction. Respondent views the charge as hidden interest. Appellant argues that the function of the $56,250 is set forth in the authorization for the loan commitment (footnote 1, supra), which, in pertinent part, is as follows:

"In consideration of your [Sherwood and Roberts Inc.] obtaining written commitments for all three loans, which are accepted by us, we hereby agree to pay you for your services a brokerage fee of $56,250.00.

"The payment of the brokerage fee of $56,250.00 shall be made to you at the time the first of these three loans is closed and we hereby authorize the lender or lenders making such loans to pay said brokerage fee from the loan proceeds in accordance with the provisions hereof and have executed an extra copy

of this authorization for delivery to said lender or lenders."

Simultaneously with the execution of the above quoted authorization by respondent, Sherwood and Roberts, Inc. agreed to make all three loans. Separate instruments signed by officers of Sherwood and Roberts, Inc. begin with the following recitation:

"Based on your [D & M Development Co., Inc.] application for a loan and the information contained therein, we are pleased to advise you that, subject to the conditions herein set forth, this Company [Sherwood and Roberts, Inc.] agrees to make the following loan to be secured as provided herein."

The interim construction loan commitment was for $1,650,000 for one year at 6¼% interest. The commitment required that the loan be closed on or before March 1, 1965, or otherwise the obligation of the lender would terminate. The permanent loan commitment was for a loan of $1,650,000 for a period of 26 years bearing interest at 6%. That loan was to be closed on or before March 1, 1966, or the obligation of the lender would terminate.

On February 17, 1965, respondent advised appellant that an extension of the commitment for the interim construction loan was needed beyond March 1, 1965 to April 1, 1965. The extension was granted by appellant. During this period of time appellant was attempting to broker the permanent loan commitment and on April 28, 1965 obtained advice from the Mutual Benefit Life Insurance Company of New Jersey that it would make the permanent loan for the shopping center. The respondent received the documents evidencing the interim construction loan, but said documents were never executed by respondent and the commitment for the interim construction loan was allowed to expire.

At this point, Sherwood and Roberts, Inc. had honored fully all three of its loan commitments and nothing further remained for respondent to do except sign the various documents and draw the monies. On

May 26, 1965, however, respondent advised Sherwood and Roberts, Inc. that it would not need the interim or permanent loans as committed by Sherwood and Roberts, because respondent had secured the needed funds from another company under more advantageous conditions.

The land acquisition loan in the amount of $306,000 made by appellant was repaid in full by respondent on September 28, 1965, together with $18,456.28 in interest. Said interest does not exceed the maximum interest allowed by our statute.

Beginning in October, 1965, correspondence was initiated by respondent questioning the propriety of the "brokerage" fee and indicating that the said fee presupposed the placing of all three loans by appellant. Appellant replied that the brokerage fee had been earned when the written commitments for all three loans were made by Sherwood and Roberts, Inc. and accepted by respondent. After further correspondence stating and restating the positions of the parties, respondent brought this action on December 2, 1966 alleging that the brokerage fee of $56,250 and the sum of $18,456.28 both constituted interest on the sum of $249,750 actually received by respondent and that the transaction was therefore usurious. Upon the motions for summary judgment made by both parties, as aforesaid, the view of respondent was adopted by the district court. It found that the sums were interest on the $306,000 loan and that the said amount exceeded the max-

imum interest chargeable under our statute, I.C. § 27-1905 [2], and was therefore usurious. The court, under the provisions of our statute, I.C. § 27-1907 [3], trebled the amount which it had adjudicated as interest and awarded judgment for respondent in the amount of $224,118.85. We hold that such action was error.

As indicated heretofore, the trial court in this matter accompanied his judgment with certain findings of fact. It is the established rule of this state that when evidence is wholly in the form of depositions and documentary evidence, as here, findings of fact are not binding on a reviewing court. Poesy v. Closson, 84 Idaho 549, 374 P.2d 710 (1962); Saccomano v. North Idaho Shingle Co., 73 Idaho 284, 252 P.2d 518 (1952); West v. Brenner, 88 Idaho 44, 396 P.2d 115 (1964). In such cases, the appellate court may determine the facts de novo from the record. Koron v. Myers, 87 Idaho 567, 394 P.2d 634 (1964); Idaho Power Co. v. City of Buhl, 62 Idaho 351, 111 P.2d 1088 (1941); Burns v. Skogstad, 69 Idaho 227, 206 P.2d 765 (1949); Hale v. McCammon Ditch Co., 72 Idaho 478, 244 P.2d 151 (1952).

In summary judgment cases, findings of fact are not required at all. I.R. C.P. 52(a). Certainly, a summary judgment cannot be granted where there are any disputed issues of material fact. I.R. C.P. 56(c). However, courts frequently do make findings of fact when granting mo-

2.  "27-1905. Maximum rate of interest.— Parties may agree in writing for the payment of any rate of interest, on money due or to become due on any contract, not to exceed the sum of eight per cent (8%) per annum;  *  *  * "
    (Note: This section, so far as relevant and reproduced supra, now appears in identical form as I.C. § 28-22-105.)

3.  "27-1907. Usury—Charging—Penalty— Indorsee in due course, exception.—The taking, receiving, reserving, or charging a rate of interest greater than is allowed by this chaper, when knowingly done, shall be deemed a forfeiture by the person so taking, receiving, reserving or charging to the benefit of the person paying or

being charged, of the entire interest which the contract carries with it or which has been agreed to be paid thereon, plus twice the amount of such interest. In case the greater rate of interest has been paid, the person by whom it has been paid, or his legal representatives, may recover back the amount of the interest thus paid from the person taking or receiving the same, plus twice the amount of such interest in addition. No indorsee in due course of negotiable paper is affected by any usury exacted by any former holder of such paper unless he have actual notice of the usury previous to his purchase."
    (Note: The above section now appears in identical form as I.C. § 28-22-107.)

tions for summary judgment, and "[s]uch findings may well be helpful to the appellate court in making clear the basis for the trial court's decisions." 3 Barron and Holtzoff, Federal Practice and Procedure, § 1242, at 201 (Rules Ed., 1958). Such findings, being gratuitous, however, have no more influence on this Court than their merits warrant.

The deposition of Roy F. Miller, Sr., Vice President of the respondent, indicates that respondent received the commitments for all three loans prior to receiving the land acquisition loan and the proceeds thereof. He states conclusively that he fully understood that the $56,250 was paid in consideration of receiving the three commitments. He further states that the only reason the commitments for the interim and permanent construction loans were not picked up by respondent was because it had obtained what it considered more advantageous financing from another source, even though the arrangements with Sherwood and Roberts, Inc. were the best that could be obtained at the time they were made.

The district court found that the terms and conditions of the loan commitments were such as to render the obligation of Sherwood and Roberts indefinite. The deposition of Mr. Miller, however, contains discussion of these terms and conditions and the reasons for them without suggesting that the obligations were indefinite. As stated by the deposition of Mr. Miller:

"Q. (By Mr. Racine) The plain fact is, you say it earlier, Mr. Miller, that if you had not been able to get the funds from any other source, you certainly would have expected to enforce the commitments, isn't that true?

"A. That is right."

The district court in this matter made other findings of fact that do not appear to be borne out by the evidence which, as above mentioned, is all in the form of depositions, interrogatories and affidavits. Finding of Fact No. XV of the district court is to the effect that the land acquisi-tion loan constituted the entire transaction. That finding of fact finds no support in the evidence. There obviously was a three loan package contemplated by both parties at the outset, and the three loan package constituted "the entire transaction." It is immaterial whether respondent entered into the commitments for all three loans wholeheartedly or whether it did so because it was the only way to gain the money for the land acquisition. All three commitments were made by Sherwood and Roberts, Inc. and accepted by respondent. They were made simultaneously and the documentary evidence indicates that the brokerage fee or commitment fee was charged on the basis of all three commitments.

The trial court's findings of fact XIII and XIV are to the effect that the commitments for the interim construction and permanent construction loans contained provisions which make them conditional and revocable. The documents in and of themselves do not appear to be either conditional or revocable, and the only oral evidence outside the agreements is to the effect that respondent would have "expected to enforce the commitments" if a better financing arrangement had not been obtained from other parties. It is obvious that although the commitments are clearly lender's documents, the terms and conditions could have been met and both parties at all times regarded the commitments as firm. As previously noted, both construction loans were in fact arranged by appellant and the only reason they were not actually executed and monies advanced thereon was the voluntary withdrawal by the respondent from the arrangements.

As stated at the outset, the basic question to be decided is whether the fee of $56,250 should be regarded as interest. There is little case law on this question. The case of Pivot City Realty Co. v. State Savings & Trust Co., 88 Ind.App. 222, 162 N.E. 27 (1928), involved an agreement wherein a savings and trust company agreed, for a commission of 2% per year,

to loan a realty company up to $50,000 at 6% interest for a period of two years. That court held that the fee did not render the loan usurious because it was "to compensate appellee State Savings & Trust Company for being at all times prepared to loan appellant the full amount of the $50,000, * * *" See also Daily Mines Co. v. Catalina Consolidated Copper Co., 59 Ariz. 149, 124 P.2d 320 (1942). See also Altherr v. Wilshire Mortgage Corp., 104 Ariz. 59, 448 P.2d 859 (1968), holding that a reasonable commitment fee is not interest, but that what is reasonable must be determined ad hoc as a matter of fact.

A further description of a commitment fee is noted in Prather, Mortgage Loans and the Usury Laws, 16 Bus. Lawyer 181 (Nov., 1960), wherein it is stated:

"The commitment fee buys a commitment; the fee paid is not 'for the use of money,' but for the privilege later of actually borrowing the money. It is an option, not a loan. There is a risk involved to the lender for which it is equitable that he be paid. In committing to lend money in the future, the lender is taking a risk that the yield, rate committed for, and security terms will not be less favorable at the time the loan actually is made than at the time of the commitment. Most certainly if the committed loan never is made, no question of usury could be raised. Indeed, this demonstrates even more clearly that the prospective borrower has bought something other than money, namely, the right to secure a loan of money if he later decides he wants it. In some instances mortgage lenders choose to refund the commitment fee if the loan actually is made. If this is done, of course, there could be no involvement with the usury laws, at least with respect to the fee. Commitment fees are customary, and provided they are not completely out of line with the going rate in a community there appears to be little danger of challenge on this score."

Accord, Hershman, Usury and the Tight Mortgage Market, 85 Banking L.J. 189, 209 (March, 1968).

█ We believe that the application of the above reasoning to the facts of the case at bar prompts the conclusion that the commitment fee charged here was not interest. This fee was not a charge "for the use of money;" rather, the respondent shifted the risk of the money market from itself to Sherwood and Roberts, Inc., and agreed to pay $56,250 for that shift. By the issuance of the three commitment letters, respondent was guaranteed the ability to borrow the rather large sum of money involved at a later date at a specific interest rate for a specific term. If interest rates rose generally, it would have been highly advantageous for respondent to possess such an option. If interest rates declined generally, respondent was not required to execute and accept the loans, and indeed it did not do so.

In short, economic advantage accrued to respondent. It is our belief that the commitment of Sherwood and Roberts, Inc. to make or procure the making of three loans to respondent was a transaction collateral to the actual land acquisition loan made by Sherwood and Roberts to respondent. This court in the recent case of Boyd v. Head, 92 Idaho 389, 443 P.2d 473 (1968), was presented with a set of the facts which, while distinguishable from the case at bar, involved the question of whether a transaction collateral but simultaneous with the making of a loan tainted that loan with usury. We said there:

"Examination of this court's opinions dealing with usury reveals that the present action is the first in which we have been asked to determine whether an ostensibly separate commercial transaction entered simultaneously and with reference to a loan agreement has tainted the loan with usury. Because of the obviously delicate nature of this question and because this court 'will never hesitate to pierce a devious device or form which

seeks to circumvent the usury law,' we have studied the record closely and have searched extensively for pertinent authority. We have discovered no case involving a transaction identical to that of present concern, but several courts have passed upon essentially similar transactions.

"The common principle emerging from these opinions may be summarized: the collateral transaction does not taint the loan with usury if the transaction is entered without usurious intent and is supported by an adequate or fair consideration separate and distinct from the loan agreement. Thus, the courts have investigated the collateral transaction between the borrower and lender to determine if it contained a 'fair price * * * full compensation [and] * * * equivalent benefit,' if it was 'not unfavorable' to the borrower but rather was 'mutually beneficial,' and if it was supported by independent consideration which was 'ample,' 'adequate and commensurate.' * * * If the agreement benefits equivalently the borrower and the lender, the courts when determining whether the accompanying loan is usurious refuse to treat the collateral advantages accorded the lender as interest compensation or extra payment on account of the loan. * * *"

There is no evidence presented in the record before us to support any finding that the fee charged by Sherwood and Roberts, Inc. as a "brokerage" or "commitment" fee was an unfair or inadequate consideration for the commitment undertaken by Sherwood and Roberts, Inc. or that said fee was completely out of line with the going rate within the commercial community.

One further aspect of this matter needs exploration at this time. Assuming for the sake of discussion that a commitment fee were to be considered interest, it is the settled law of this state that where usury does not appear upon the face of an instrument, the courts must take into account all the circumstances surrounding the transaction. Meridian Bowling Lanes, Inc. v. Brown, 90 Idaho 403, 412 P.2d 586 (1966). This Court has further held that for a transaction to have been usurious, it must have been so at its inception. Eagle Rock Corp. v. Idamont Hotel Co., 59 Idaho 413, 85 P.2d 242 (1938); Easton v. Butterfield Live Stock Co., 48 Idaho 153, 279 P. 716 (1929). Intent to exact a usurious amount of interest is an essential aspect of usury. Smith v. Sherwood & Roberts, Spokane, Inc., 92 Idaho 248, 441 P.2d 158 (1968). Examining all the surrounding circumstances of the case at bar, we find that the transaction at its inception involved three loans spanning a period of 26 years. The rates of interest on the interim construction loan and the permanent construction loan were to be 6¼% and 6% per year, respectively. Assuming that the $56,250 fee is considered as interest and applied over the total period of the three loans, the yearly interest rate rises to only 6.2% and is clearly not usurious. Since the transaction was not usurious at the inception, there would seem to be no intent to exact usurious interest. It would be peculiar indeed if a borrower by his voluntary actions, could change a transaction non-usurious at its inception into a usurious one for the purpose of avoiding all interest charges and recovering thereby a penalty of three times the interest charged.

As herein noted, both parties moved for summary judgment and in effect agreed that there were no material issues of fact for decision by the trial court. We hold that the district court erred in granting respondent's motion for summary judgment, and since there are no disputed issues of fact, no further proceedings are deemed necessary and the action is remanded to the trial court for entry of judgment in favor of defendant. Costs to appellant.

McFADDEN, C. J., and McQUADE, DONALDSON and SPEAR, JJ., concur.