478 P.2d 878

**JANSS CORPORATION, Plaintiff-Appellant,**

v.

**BOARD OF EQUALIZATION OF BLAINE COUNTY, Idaho, Defendant-Respondent.**

**No. 10495.**

Supreme Court of Idaho.

Dec. 21, 1970.

Lloyd J. Walker, Twin Falls, for plaintiff-appellant.

V. K. Jeppesen, Hailey, for defendant-respondent.

SPEAR, Justice.

After having suffered annual losses of approximately $650,000.00 for several years prior to December 1964, the Union Pacific Railroad at that time sold the Sun Valley Resort to Janss Corporation, appellant herein, for the sum of $1,863,843.00. The property included 4000 acres of land in Blaine County, Idaho, and the hotel and

other buildings which were located on the land. In 1965 the property was examined for the purpose of tax assessment, and was valued at $4,000,000.00. After appellant objected to that figure, the tax assessor for Blaine County, a representative of the appellant, and a member of the State Tax Commission examined the property in detail and allowed for such functional obsolescence as was pointed out by the appellant's representative. The previous figure was then adjusted, and the property was assessed for the 1966 tax year at the cash value of $3,089,000.00.

Appellant protested the assessed valuation of the property before the Blaine County Board of Equalization, contending that the purchase was made in an arm's length transaction, and that the value of the property for tax purposes should be the price at which it was purchased. From denial of their claim, appellant appealed to the State Tax Commission. During the latter proceeding, testimony was given indicating that since the purchase of the property in question, the property in the area has greatly increased in value. The State Tax Commission affirmed the Board of Equalization's denial of appellant's claim for reduction in assessed valuation of the property, and from that decision appellant appealed to the district court. By stipulation of the parties, the case was heard in the district court on the record established in the Tax Commission hearing and upon briefs filed by the parties. From the order of the district court affirming the ruling of the State Tax Commission, appellant has effected this appeal.

One major issue is presented by this appeal: How is the full cash value of the property ascertained for the purpose of tax assessment? Appellant argues that one arm's length transaction in which the property is exchanged for cash establishes the "market value" of that property, and that "market value" is the equivalent of "full cash value" of property for the purposes of tax assessment. Based upon that contention, appellant asserts that the trial court erred in not ruling that the price appellant paid for the property in question was the full cash value of the land at which the property should have been assessed.

The ascertainment of property value for the purpose of assessment of taxes is controlled primarily by statute. The statutory law in 1966 provided:

"[I.C.] 63–111. *Value defined.*—By the term 'value,' 'cash value,' 'full cash value,' 'true value' or 'true cash value' is meant the value at which the property would be taken in payment of a just debt due from a solvent debtor, or the amount the property would sell for at a voluntary sale made in the ordinary course of business, taking into consideration its earning power when put to the same uses to which property similarly situated is applied." (Amended 1965)

"[I.C.] 63–202. *RULES AND REGULATIONS PERTAINING TO FULL CASH VALUE—DUTY OF ASSESSORS.*—It shall be the duty of the State Tax Commission to prepare and distribute to each County Assessor and each Board of County Commissioners within the state of Idaho, rules and regulations prescribing and directing the manner in which full cash value is to be determined. Such rules and regulations shall include the following criteria for determining value to the extent that the same are applicable to the property being evaluated: (1) earning capacity; (2) relative location; (3) desirability and functional use; (4) reproduction cost less depreciation; (5) comparison with other like properties of known or recognized value; and (6) market value in the ordinary course of trade. The State Tax Commission shall also prepare and distribute from time to time such amendments and changes to said rules and regulations as shall be necessary in order to carry out the intent and purposes of this act. Said rules and regulations shall be in such form as the Commission shall direct, and shall

be made available upon request to other public officers and the general public *in reasonable quantities without charge.* In ascertaining the full cash value of any item of property subject to taxation, the assessor of each county shall be, and hereby is required to abide by, adhere to and conform with the rules and regulations hereinabove required to be promulgated by the State Tax Commission." (Amended 1965)

■ Prior to 1965, I.C. § 63–202 did not include the six factors set out therein for consideration in determining the full cash value of the property. By amending the statute and including the factors, the legislature must have intended that such factors be considered by the tax assessor, and the statute clearly orders him to do so "to the extent that the same are applicable to the property being evaluated." A primary rule of statutory construction is that all sections of the applicable statutes should be considered and construed together to determine the intention of the legislature. Keenan v. Price, 68 Idaho 423, 195 P.2d 662 (1948); Jackson v. Jackson, 87 Idaho 330, 393 P.2d 28 (1964); Lebrecht v. Union Indemnity Co., 53 Idaho 228, 22 P.2d 1066 (1933). Construing the two quoted statutes together, when the assessment of the property in question was made in 1966, the tax assessor was bound by statute to determine the full cash value of the property by considering each of the applicable factors set out in the statutes, and could not arrive at the full cash value by merely taking the sale price decided upon by Janss and Union Pacific Railroad in the single transaction that occurred between them.

Appellant argues, however, that the factors listed in the statutes for consideration in ascertaining "full cash value" are all substitutes for finding the "market value," and may not be used when the property to be assessed has been sold recently in an arm's length transaction. The statutes, however, do not support such an interpretation, and neither do the cases cited as authority by the appellant for such proposition.

As the Court held in Abbot v. State Tax Commission, 88 Idaho 200, 398 P.2d 221 (1965):

"In determining the value of property for taxation purposes the assessor may and should consider cost, location, actual cash sale value and all other factors, known or available to his knowledge, which affect the value of the property assessed, to the end that the property of each taxpayer will bear its just proportion of the burden of taxation. Anderson's Red & White Store v. Kootenai County, 70 Idaho 260, 215 P.2d 815.", (88 Idaho at page 208, 398 P.2d at page 225)

and this was decided prior to the 1965 amendment to the statutes.

The court in Abbot did also state that "This court has consistently held that the only criterion for determining value of property for ad valorem tax purposes is the full cash or market value. Boise Community Hotel v. Board of Equalization, 87 Idaho 152, 391 P.2d 840; C. C. Anderson Stores Co. v. State Tax Comm., 86 Idaho 249, 384 P.2d 677."

Also in C. C. Anderson Stores Co. v. State Tax Comm., 91 Idaho 413, 422 P.2d 337 (1967) this court pointed out that property which is bought and sold for cash on the current market has a market value, which, as to such property, becomes the dominant factor in its valuation. However, as set out in that opinion, because the property involved was unique—the only one of its kind in Idaho at that time—it had no market value and the valuation had to be based upon other considerations. Likewise, "market value" can not be established by a *single* arm's length transaction in which a unique property—such as Sun Valley—is sold for cash.

■ The principles governing the ascertainment of value for the purposes of taxation are the same as those that control in condemnation cases, confiscation cases, and generally in controversies involving the as-

certainment of "just compensation." Great Northern Ry. Co. v. Weeks, 297 U.S. 135, 56 S.Ct. 426, 80 L.Ed. 532 (1936); 51 Am.Jur. 653, § 701 Taxation. In such cases the "market value" becomes an important standard of measurement in the valuation of property only after there have been numerous sales or exchanges of similar property. Only then may the inference arise that the equivalent arrived at by the haggling of the market is probably the price at which the property would be offered and accepted. But when the property is of a kind seldom exchanged, it has no "market value," and then recourse must be had to other means of ascertaining value. Kimball Laundry Co. v. United States, 338 U.S. 1, 69 S.Ct. 1434, 93 L.Ed. 1765 (1949); United States v. Toronto, Hamilton & Buffalo Nav. Co., 338 U.S. 396, 70 S.Ct. 217, 94 L.Ed. 195 (1949); Sibley v. Town of Middlefield, 143 Conn. 100, 120 A.2d 77 (1956). As we stated recently in the case of Gillingham v. Stadler, 93 Idaho 874, 477 P.2d 497 (1970):

"In any single individual transaction there are many variables which are dependent upon the peculiar aspects of the transfer and which affect the price agreed upon by the parties. Market value, therefore, is generally established by numerous sales of the same or comparable property and, although the price paid for property may be admissible to prove its market value, that fact alone is not conclusive."

Although a single arm's length transaction does not establish market value, and the price indicated thereby is not controlling as to the value of the property, such price may be considered as one factor in arriving at the full cash value of the property in question. As explained by Justice Clark in the U. S. Supreme Court case of United States v. Toronto, Hamilton & Buffalo Nav. Co., supra:

"At times, however, peculiar circumstances may make it impossible to determine a 'market value.' There may have been, for example, so few sales of similar property that we cannot predict with any assurance that the prices paid would have been repeated in the sale we postulate of the property taken. We then say that there is 'no market' for the property in question. But that does not put out of hand the bearing which the scattered sales may have on what an ordinary purchaser would have paid for the claimant's property. *We simply must be wary that we give these sparse sales less weight than we accord 'market' price, and take into consideration those special circumstances in other sales which would not have affected our hypothetical buyer.* And it is here that other means of measuring value may have relevance—but only, of course, as bearing on what a prospective purchaser would have paid." (emphasis supplied) (338 U.S. at page 402, 70 S.Ct. at page 221)

■ The record indicates that the tax assessor, in determining the full cash value of the appellant's property, considered the proper factors and criteria pursuant to the rules and regulations of the State Tax Commission and the controlling statutes. Since the appellant has not shown that the value arrived at from such assessment is prejudically discriminative as to his property, or that the assessment was otherwise unlawful or erroneous, the presumption that the value affixed by the assessor is correct prevails. Abbot v. State Tax Commission, supra; C. C. Anderson Stores Co. v. State Tax Commission, supra.

We have reviewed appellant's other assignments of error and find no reversible error therein.

The order of the district court is affirmed. Costs to respondent.

DONALDSON and SHEPARD, JJ., concur.

McFADDEN, Chief Justice (dissenting).

The record before this court discloses that the appellant Janss Corporation had been negotiating with the Union Pacific

Railroad Company for a period of some six months prior to the time that the sale of the real property generally denominated "Sun Valley" was consummated on December 10, 1964. The record discloses that this was an "at arm's length" transaction between these two large corporations, with the purchase price of the real property involved in this proceeding being approximately $1,800,000. The respondent has presented no evidence which would in any way denigrate that this price was arrived at by the two corporations dealing at arm's length, with no residual considerations, conditions, or agreements whatsoever. Within a month of the date of this transaction, by law the property of the county was to be assessed, i. e., on January 10, 1965, which assessed valuation would be the basis for the computation of the tax rolls for the year 1965.

Prior to 1965, the valuation of this property as assessed to the Union Pacific Corporation was approximately $4,000,000. When the assessment notices for 1965 came out in the spring of 1965, the assessed valuation on this property was in excess of $4,000,000. Negotiations were commenced on behalf of the appellant for an adjustment of this figure and continued for some extended length of time and eventually the assessed valuation of the real property was set at $3,089,000 for 1965, i. e., as of January 10, 1965.

The taxes based on this valuation were paid under protest for the year 1965, and again for the year 1966. However, Blaine County, represented by its then assessor, suggested that it would be too great a load on the county to reduce the assessment level on this property from the four million dollar figure to approximately two million dollars in the one year, and appellant corporation then recognized the burden that would be cast upon the county if such a drastic reduction took place, and it was agreeable to the appellant corporation that with the additional construction to be commenced during the months following, there would be a levelling off of the assessed valuation, and did agree to not press its protest of the assessed valuation for 1965, but that it would still feel free to press for readjustment of the figure for 1966.

The issue presented by this appeal is primarily whether the actual cash purchase price of an extensive real estate development such as Sun Valley should be given a dominant role in determination of the assessed valuation of the property for tax purposes.

It is my conclusion that the trial court, as well as the assessor and state tax commissioner, erred in their approach to a resolution of this issue, which error is compounded by the majority opinion of this court.

The trial court in its findings of fact determined that for the tax year of 1965 the appellant and the county assessor of Blaine County, together with representatives of the State Tax Commission made a thorough examination of the property and agreed that the full cash value of the property involved for the tax year 1965 for tax purposes was the sum of $3,089,000; that during the period from December 1964 through the beginning of the tax year 1966 the property involved greatly increased in value; that the county assessor correctly determined the full cash value of the property for 1966 as the sum of $3,089,000 and that there was insufficient evidence presented to establish any different value for the property of that year of 1966.

The parties to this action stipulated that the trial court should hear the appeal from the State Tax Commission on the transcript of the proceedings before that body, together with all exhibits and all county records and work sheets. Thus the findings of fact of the trial court are not binding on this court on appeal. Jaussaud v. Samuels, 58 Idaho 191, 71 P.2d 426 (1937); Hale v. McCammon Ditch Co., 72 Idaho 478, 244 P.2d 151 (1951); D & M Development Co. v. Sherwood & Roberts Inc., 93 Idaho 200, 457 P.2d 439 (1969).

The county assessor who was in office in 1966 and who made the assessment for that year, by affidavit filed in the district court, stated:

"* * * The real property assessment on the property located in Blaine County which had been purchased by the Janss Corporation in December, 1964, was assessed as of January 1, 1965, by the Assessor of Blaine County, Jack Irwin, at a figure of $3,089,000. During the year of 1965 physical additions, (lodge-condominiums) were made which were assessed at their actual sale price. The Blaine County Assessor's office did not, however, change the assessment on the property beginning with the 1st day of January, 1966. The basic purchase was continued at an assessment of $3,089,000 as was stated in the hearing because it did not appear that there had been any change in value on those portions of the property which had not been improved during that year."

In a subsequent affidavit, the assessor explained the last sentence of the foregoing quotation, as follows:

"By this statement affiant intended to mean that all depreciation attributable to such property for the tax year 1966, beginning January, 1966, had been completely offset by 'cost to cure' improvements and by general property value increases during the preceding year."

The statutes of this state provide that all property within this state not expressly exempted is subject to taxation (I.C. § 63–101), and during 1965 all real and personal property subject to assessment and taxation must be assessed at its full cash value (I.C. § 63–102.) The term "cash value" (or "value" or "full cash value") meant the value of the property would be taken in payment of a just debt from a solvent debtor, or the amount the property would sell for at a voluntary sale made in the ordinary course of business (I.C. § 63–111). When there is a sale at arm's length between a willing buyer and a willing seller, as of the time of such sale there is but little need to resort to any "appraisal" of the property, for there is a price which has been established, and as was stated in Anderson's Red & White Store v. Kootenai County, 70 Idaho 260, at 265, 215 P.2d 815 at 818,

"We have a number of statutory provisions intended to guide and direct the assessor in making assessments. Those which may be considered directly involved here are: Secs. 63–102, 63–111, 63–202, 63–1203, 63–1206, and 63–1207, I.C. These statutes indicate that, for ad valorem taxation, all property is to be assessed at its 'full cash value' as of the date of the assessment. Property which is bought and sold for cash on the current market has a market value, which, as to such property, becomes the dominant factor in its valuation. Secs. 63–111 and 63–202, I.C. As to property which has no current market, other factors (such as earning power, replacement cost less depreciation, or consensus of opinion of taxpayers, Sec. 63–202, I.C.) become the more important. * * *."

See also: Appeal of Sears, Roebuck & Co., 74 Idaho 39, 256 P.2d 526 (1953).

In C. C. Anderson Stores Co. v. State Tax Com'n, 91 Idaho 413, 422 P.2d 337 (1967), this court again recognized the principle that "property which is bought and sold for cash on the current market has a market value, which as to such property, becomes the *dominant factor in its valuation.*" (Emphasis added.) 91 Idaho at 415, 422 P.2d at 339.

Respondent urges, however, that there was no current market for this property —that it was a resort, unique in scope and plant, and hence there was no "market value," and thus the other factors must be employed in determining its valuation for assessment purposes. However there was a "market" for this property as was evidenced by the fact that it was sold, at a sale untainted by any side agreements, conditions or residual considerations. In such a situation, it is my conclusion that a true "cash value" was established by such sale,

which under the statutes and the prior decisions of this court was the true value of the property as of the date of sale. This situation is significantly different from a fact situation involving a recent isolated sale of a similar property, rather than the property which is being assessed. In such cases, it truly cannot be said that such an isolated sale of a similar property establishes the market value of the assessed property. The statutory date for the valuation of this property was the second Monday of January (I.C. § 63–102), and under the facts here, that date was January 11, 1965. Unless there was some material change between the date of sale, December 10, 1964, and January 11, 1965, it is difficult to reconcile the action of the taxing authority in allocating only 30% weight to the actual sale price.

It is recognized that a valuation established by a sale is meaningful only as of the time of sale, and that as time passes, other elements come into play: depreciation, additions, improvements, changing economic conditions on a national or local level or both, and the many other factors. As time passes, the dominant role of the original sale price becomes of lesser importance.

The amendments to the various statutes enacted in 1965 (S.L.1965, Ch. 312), effective December 31, 1965 (S.L.1965, Ch. 312, § 34), in my opinion did not materially change the emphasis or weight to be given sale price in attempting to establish valuation of the property for purposes of taxation. The Tax Commission in conformity with I.C. § 63–202 as amended by S.L.1965, Ch. 312, § 9, enacted regulations effective January 1, 1966, dealing with real property valuation. In part those regulations provide:

"For ad valorem tax purposes, the appraiser is concerned with determining the *full cash value* of a given property. Recognized techniques have been developed which, when properly used, should reflect *full cash value*. When a market is non existent, these techniques, if properly used, will approximate the value.

These techniques are:

The Cost Approach, or Summation Method * * *

The Income Approach, or Income Capitalization Method

* * * * * *

The Market Data Approach, or Comparative Method * * *." (Emphasis added.)

The Tax Commission recognized that the ultimate objective was first to determine "full cash value."

In State ex rel. Park Investment v. Board of Tax Appeals, 175 Ohio St. 410, 195 N.E. 2d 908 (Ohio Sup.Ct.1964), the court stated in reply to the question presented of what is the value or true value in money of real property:

"In the last analysis the value or true value in money of any property is the amount for which that property would sell on the open market by a willing seller to a willing buyer. In essence, the value of the property is the amount of money for which it may be exchanged, i. e., the sales price.

Respondent urges that the sales price is only one of many things which must be taken into account in determining value.

The confusion in the area of valuation arises from a failure to differentiate between the ultimate result which is sought to be attained, namely, the value of the property in question, and the methods which may be used to determine such value in the absence of an actual sale.

The best method of determining value, when such information is available, is an actual sale of such property between one who is willing to sell but not compelled to do so and one who is willing to buy but not compelled to do so. (Citations omitted.) This, without question, will usually determine the monetary value of the property. However, such information is not usually available, and thus

an appraisal becomes necessary. It is in this appraisal that the various methods of evaluation, such as income yield or reproduction cost, come into action. Yet, no matter what method of evaluation is used, the ultimate result of such an appraisal must be to determine the amount which such property should bring if sold on the open market." 195 N.E.2d at 910.

See also: Selig v. Board of Revision, Mahoning County, 12 Ohio App.2d 157, 231 N.E.2d 479, 483–484 (Ct.App.Ohio, 1967); 29 Am.Jur.2d Evidence § 395 p. 445–6.

In this case the assessor who valued the property for 1966 employed the same criteria used for the 1965 assessment, which established the base price. If the base price was in error for 1965, this error was carried over to the valuation in 1966. It is my conclusion that the judgment of the trial court should be reversed, and the determination made as to the valuation in 1966 based on a correction of the 1965 valuation, even though there was no protest pursued as concerned the 1965 taxes paid.

McQUADE, J., concurs in this dissent.