837 P.2d 869

**Shelley Diane SMITH, Petitioner–Appellee,**

v.

**Harmon Joseph SMITH, Respondent–Appellant.**

**No. 12199.**

Court of Appeals of New Mexico.

July 8, 1992.

278

Charles W. Cresswell, Cresswell & Roggow, P.A., Las Cruces, for respondent-appellant.

Charlotte Greenfield, Reeves, Chavez, Greenfield, Acosta & Walker, P.A., Las Cruces, for petitioner-appellee.

## OPINION

DONNELLY, Judge.

Husband appeals from a decree dissolving the marriage of the parties and impressing a community lien on Husband's separate business known as Leisure Pools, Inc. (the Corporation). The single issue asserted on appeal is whether the trial court erred in its distribution of the community property, allocation of community debts, and awarding Wife a $25,000 community lien against Husband's interest in the Corporation. We affirm.

FACTS

The parties were married on January 7, 1983. Prior to the marriage, Husband acquired the Corporation as his separate property. During coverture both parties were employed by the Corporation, although Wife did not work continuously for the Corporation throughout the marriage. The parties separated in June 1988, and Wife filed for divorce in August 1988. Following a trial on the merits and a rehearing involving the distribution of the community property and marital obligations, the trial court found that Husband's separate business was "subject to a community lien in the sum of $50,000.00 by reason of the value of [the] business having been enhanced during the marriage by the labor, skill and talents of the parties." The court concluded that Wife was entitled to one-half of the value of the community lien impressed against the Corporation. After off-setting the value of the property awarded to Husband and Wife, the court ordered Husband to pay Wife the amount of $7,344 in order to equalize the distribution of property and outstanding community debts.

At trial, Wife presented the testimony of Randy Travis, a certified public accountant with the accounting firm of Kriegel & Co., Ltd. The Kriegel firm provided accounting services to the Corporation during the period of 1982 to 1987. Travis was employed by the Corporation to perform accounting services for the business from January 1983 to 1987. Over Husband's objection, the court recognized Travis as an expert witness and permitted him to testify concerning the increase in the value of the Corporation during coverture and the value of Wife's services performed on behalf of the Corporation. Travis testified that the Corporation paid Wife a salary of $14,030 in 1984, the sum of $16,427 in 1985, and that she was paid $8,648 for working six months in 1986. He further testified that Wife was not compensated for her services for the Corporation during two months in

1983 and for three months in 1987. Travis testified that Wife performed the same duties as a corporate comptroller and that considering the nature and value of her services she should reasonably have been compensated at a rate of $24,000 per year during the marriage, with a $1,000 increase in salary per year through 1987, adjusting for actual months worked. He testified that comptrollers in the Las Cruces area, performing tasks similar to those performed by Wife, earned between $28,000 and $35,000 per year, depending upon their experience.

Travis also testified that Husband was also undercompensated by the Corporation during the marriage. Husband earned a salary of $42,761 in 1983, $43,836 in 1984, $48,836 in 1985, $43,836 in 1986, and $47,-536 in 1987. He stated in his opinion Husband was undercompensated in the amount of $2,000 per year from 1983 to 1985, and was underpaid in the approximate amount of $4,000 to $5,000 for the years 1986 and 1987.

Travis presented documents supportive of his opinion of the fair market value of the Corporation prior to the marriage in 1982, as compared to the fair market value of the Corporation in 1987. According to his calculations, the Corporation had a fair market value of $302,000 in 1982. He also stated that the Corporation had a fair market value of between $394,000 and $478,000 for 1987. He also testified that in his opinion the $394,000 figure was the more accurate valuation. During his testimony, the court posed the following question:

> Do you have an opinion as to whether or not the increase in the market value of the business between the end of 1982 and the end of 1987 is attributable to the personal skill and efforts of Mr. and Mrs. Smith since they were married in January of 1983?

The witness testified that in his opinion eighty percent of the increase of the Corporation's valuation during the marriage was attributable to the combined skill and efforts of Husband and Wife while working for the Corporation.

During the course of the trial, Husband entered into a contract to sell certain of the assets belonging to the Corporation. The sale included equipment and vehicles, inventory, tradename, trademarks, and goodwill. Husband testified that the sale of these assets resulted in a sales price of $116,631. Travis testified that this sale was not a valid indicator of the Corporation's current fair market value because it did not include a sale of all of the Corporation's assets and because Husband retained cash assets belonging to the Corporation in the sum of $34,000, accounts receivable in the amount of $120,000, contracts in process in the sum of $86,000, contrasted with outstanding liabilities in the amount of $113,000.

In conjunction with the sale of the assets listed in the sales contract, Husband also entered into a consulting and employment agreement with the purchaser. Under the agreement, the purchaser agreed to pay Husband a salary of $12,000 for his services over a one-year employment period, plus a consulting fee of $30,000. The agreement further provided that Husband was to receive the salary and consulting fee in monthly installments of $504.08 over a 180-month period.

## DISCUSSION

In challenging the trial court's distribution of property and allocation of community debts, Husband contends that the evidence was insufficient to support the trial court's valuation of the Corporation and its conclusion that the Corporation was enhanced in value due to the skill and efforts of the parties during their marriage.

In arguing this contention Husband raises four sub-issues. He contends that: (1) there was insufficient evidence to support the trial court's determination that Wife was entitled to a $25,000 community lien against the Corporation; (2) the trial court erred by considering the opinion testimony of Wife's expert witness concerning the value of the Corporation, rather than adopting the actual sales price as the value of the Corporation; (3) the trial court erred in failing to find that the increase in the value of the Corporation did not exceed an

increase in the Corporation's value based on a fair rate of return for such business; and (4) the community was adequately compensated by the Corporation for the labor of Husband and Wife performed on behalf of the Corporation, thus rendering the court's award of a community lien against the Corporation improper.

In reviewing Husband's challenge, we view the evidence in the record in the light most favorable to the findings and judgment entered below. *In re Estate of McKim*, 111 N.M. 517, 807 P.2d 215 (1991); *see also Gavin Maloof & Co. v. Southwest Distrib. Co.*, 106 N.M. 413, 744 P.2d 541 (1987) (judgment cannot stand if conclusions on which it rests are not supported by findings of fact). If such evidence exists, then the conclusion of law must be upheld, absent an abuse of discretion. *Allied Prods. Corp. v. Arrow Freightways*, 104 N.M. 544, 724 P.2d 752 (1986).

### A. *Evidence of Fair Market Value*

Husband asserts that the court's conclusion of law determining that Wife was entitled to an award of $7,344 from Husband in order to equalize the distribution of community property and marital indebtedness, was not supported by competent evidence. Husband also argues that the trial court's finding that the Corporation increased in value "in the sum of $50,000.00 by reason of the value of [the] business having been enhanced during the marriage by the labor, skill and talents of the parties" was not supported by the evidence. We disagree.

It is undisputed that Husband acquired a controlling interest in the Corporation prior to the marriage of the parties and that his interest therein was held by him as his separate property. In New Mexico, the community is entitled to a lien against the separate property of a spouse for the enhanced value of such property attributable to community labor during marriage. *Portillo v. Shappie*, 97 N.M. 59, 636 P.2d 878 (1981). Husband is correct in his contention that Wife had the burden of proof at trial to establish that the amount of the community lien imposed by the court against the Corporation result-

ed from an increase in the value of the business due to community labor. *Bayer v. Bayer*, 110 N.M. 782, 800 P.2d 216 (Ct. App.1990). However, the record supports the trial court's determination that Wife met this burden. Evidence presented by Wife successfully rebutted the presumption that the increase in the value of the Corporation was due to normal growth of the business due to market conditions.

Travis testified that the Corporation experienced a $92,000 increase in fair market value between 1982 and 1987, thus placing its value at approximately $394,000. As observed above, he also testified that in his opinion eighty percent of the increase in the value of the business was attributable to the personal skill and efforts of Husband and Wife during the marriage. This testimony constituted substantial evidence to support the trial court's finding that the value of the Corporation was enhanced due to community labor in the amount of $50,000. *See Strickland v. Roosevelt County Rural Elec. Coop.*, 99 N.M. 335, 657 P.2d 1184 (Ct.App.1982) (fact finder may give expert testimony such weight as it deserves), *cert. denied*, 463 U.S. 1209, 103 S.Ct. 3540, 77 L.Ed.2d 1390 (1983).

### B. *Evidence of Sales Price*

Husband argues further that even if Travis was qualified to testify concerning the fair market value of the Corporation, the court erred in looking beyond the $116,631 sales price received by him from his sale of the business. Husband urges this court to adopt the rule articulated in *In re City of New York*, 98 A.D.2d 166, 471 N.Y.S.2d 105 (1983), and *Gunsch v. Gunsch*, 71 N.W.2d 623 (N.D.1955), holding that, if recent in time and free of any indication of abnormality, the sales price of property resulting from an arm's length transaction between a willing seller and a willing buyer constitutes the best evidence of the market value of a business. The court in *City of New York*, however, appears to have adopted this method of valuation, at least in part, based upon a "lack of [other] satisfactory valuation evidence from the respective experts." 471 N.Y.S.2d at 119. In *Gunsch*,

the court stated that while evidence of the sales price of property is one of the best standards of estimating value, " 'it is not in any case conclusive of value.' " 71 N.W.2d at 631 (quoting 20 Am.Jur. *Evidence* § 373 (1939)).

In *Aboud v. Adams,* 84 N.M. 683, 507 P.2d 430 (1973), our supreme court addressed the significance of evidence of the amount derived from the actual sale of property, in the context of determining damages for the breach of a contract to purchase real property. The following language in *Aboud* is instructive: "While a subsequent sale is evidence of the market value at the time of breach, it is not conclusive.... Thus, *evidence of the resale price is properly admitted as one of the factors in determining market value.*" *Id.* at 689, 507 P.2d at 436 (emphasis added) (citation omitted). Courts in other jurisdictions have similarly determined that evidence of the actual sales price of property is persuasive evidence, but not conclusive. *See Dennis v. County of Santa Clara,* 215 Cal.App.3d 1019, 263 Cal.Rptr. 887 (1989); *Sorenson v. Connelly,* 36 Colo.App. 168, 536 P.2d 328 (1975); *Janss Corp. v. Board of Equalization of Blaine County,* 93 Idaho 928, 478 P.2d 878 (1970); *Ward v. Department of Revenue,* 293 Or. 506, 650 P.2d 923 (1982) (en banc).

██ We conclude that, in the context of property division in divorce proceedings, evidence of the sales price of property resulting from an arm's length transaction not too remote in time, and which is free from any signs of impropriety, constitutes persuasive but not conclusive evidence of the fair market value of the property. Such evidence may properly be considered together with all the other relevant evidence in determining the value of the business.

██ Applying the above analysis to the facts herein, we conclude that the trial court did not err in considering evidence beyond the sales price negotiated by Husband in arriving at its determination as to the fair market value of the Corporation. Viewing the evidence in the light most favorable to support the judgment entered below, Travis's testimony was sufficient to establish the fair market value of the Corporation and the amount of the lien imposed by the trial court.

**C.** **Expert Testimony**

Husband sought to preclude the use of Travis's testimony by Wife at trial by challenging the witness's qualifications as an expert. He argues that the court erred in considering evidence of the Corporation's fair market value, other than as reflected by the sales price of assets of the Corporation. We find this argument without merit.

██ In order to testify, it must appear that an expert witness has acquired sufficient knowledge, skill, training, or experience that such testimony will aid the fact finder, but no set criteria can be laid down to test such qualifications. *Dahl v. Turner,* 80 N.M. 564, 458 P.2d 816 (Ct.App. 1969). Whether a witness possesses the necessary expertise or a sufficient foundation has been established to permit a witness to testify as an expert witness is a matter entrusted to the sound discretion of the trial court. *See Sanchez v. Molycorp, Inc.,* 103 N.M. 148, 703 P.2d 925 (Ct.App. 1985). Absent an abuse of discretion a reviewing court will not disturb the trial court's decision to accept or reject such testimony. *Madrid v. University of Cal.,* 105 N.M. 715, 737 P.2d 74 (1987); *Sanchez v. Molycorp, Inc.*

██ Opinion testimony offered by an expert witness must be predicated upon facts and data admitted into evidence at trial, facts personally perceived by the expert, and facts of a type reasonably relied upon by experts in that particular field. *Lynn v. Helitec Corp.,* 144 Ariz. 564, 698 P.2d 1283 (Ct.App.1984); *Gold Rush Investments, Inc. v. G.E. Johnson Constr. Co.,* 807 P.2d 1169 (Colo.Ct.App.1990). Our review of the record indicates that prior to allowing Travis to testify as an expert witness, the trial court allowed Husband's counsel to conduct voir dire of the witness concerning his qualifications. The evidence presented at trial revealed that the witness was a certified public accountant, that he

had worked as a full-time accountant since 1981, that he had previously qualified and had been recognized as an expert witness by another court regarding the valuation of a business, and that approximately twenty-five percent of his work involved determining the valuation of various business entities. Additionally, the record shows that the witness had performed accounting work for Husband's Corporation over a five-year period preceding the separation of the parties without any signs of dissatisfaction or disapproval from Husband. Based on the above, we find no abuse of the trial court's discretion in permitting Travis to testify as an expert witness.

### D. *Community Compensation*

Husband argues that so long as a spouse, owning an interest in a corporation as his or her separate property, provides an adequate standard of living for the community, any alleged undercompensation of the individual spouses by the Corporation for their labor is irrelevant. We disagree.

■■■ The propriety of imposing a community lien against the separate property of a party depends upon whether evidence supports a determination that community skill and labor have resulted in an increase in the value of the Corporation and whether such efforts were uncompensated or undercompensated. Evidence indicating the value of comparable services by individuals possessing similar skill and experience provides a relevant basis in deciding whether the community services were adequately compensated. *See Michelson v. Michelson,* 89 N.M. 282, 551 P.2d 638 (1976) (if community has been fully compensated for its efforts on behalf of separate business, community lien on increase in business's value is inappropriate); *Katson v. Katson,* 43 N.M. 214, 89 P.2d 524 (1939) (community owns the spouses' earning power; in determining whether community has been compensated fully for that earning power, value of the spouses' services to the business could be proven by the wages ordinarily paid for like services).

■■■ Where there has been an increase during marriage in the value of a business held as the separate property of a spouse, due in part to community efforts and labor, any undercompensation of one or both spouses employed by the business is a factor which may properly be considered in determining whether a community lien should be imposed against such property. Ascertaining the amount of comparable wages for the value of community labor performed on behalf of such business is an appropriate method of determining whether the value of such labor has been fairly compensated.

■■■ Travis's testimony, indicating his opinion concerning the amount he concluded Husband and Wife had been undercompensated, constituted evidence from which the trial court could reasonably determine that the community was undercompensated by at least $50,000 over the course of the marriage. This evidence, together with the evidence indicating that eighty percent of the Corporation's increased value during the marriage was attributable to community labor, supports the trial court's imposition of a community lien in the amount of $50,000 against Husband's separate business. *Cf. Katson v. Katson* (community must be fully compensated for earning power of spouses, and court must determine portion of increase in value attributable to that earning power).

## CONCLUSION

The judgment of the trial court is affirmed. Wife is awarded the sum of $2,000 for the services of her attorneys on appeal.

IT IS SO ORDERED.

BLACK and FLORES, JJ., concur.