244 P.2d 151

**HALE et al. v. McCAMMON DITCH CO.**

No. 7737.

Supreme Court of Idaho.

Nov. 15, 1951.

On Rehearing May 8, 1952.

Merrill & Merrill, Pocatello, for appellant.

B. W. Davis, L. F. Racine, Jr., and R. H. Jones, all of Pocatello, for respondents.

KEETON, Justice.

Plaintiffs (respondents), some of the stockholders of the McCammon Ditch Company, a corporation, brought this action against the company to secure a restraining order to restrain defendant from selling shares of stock of plaintiffs for alleged failure to pay assessments thereon, and for a determination of the rights, liabilities and duties of the parties in connection with the maintenance of the irrigation project; to determine what assessments should be made against the stock, and to compel the corporation to keep in good repair all of the ditches, canals and laterals of the entire irrigation system, and for that purpose to assess as maintenance charges an equal and uniform assessment against all shares of stock of the corporation.

Appellant (defendant) is the owner of the right to divert from the Portneuf river 68.95 cu. ft. of water per second for the irrigation of 2447.57 acres of land owned by its shareholders; and is the owner of the

main canal approximately three miles in length. From the main canal water is taken into ditches and laterals leading therefrom. The appellant secured its rights by a deed dated June 28, 1901 from the then owners of the water right—the water users prior to that time having operated as an association.

From the main canal, admittedly owned by the appellant company, there are ten laterals carrying water to the various land owners holding stock in the corporation. These were constructed by individuals over and upon their own land leading to and from the main canal. Some laterals were constructed prior to the time the appellant acquired the system, others subsequent to that time. Laterals were constructed by some of the stockholders carrying water from other laterals, and water is delivered over the land of some of the stockholders from these laterals. Some stockholders receive water direct from the main canal.

From the inception of the development of the project, the stockholders receiving water delivered into the laterals from the main canal maintained the laterals at their own expense and received their respective shares of water measured to them from an intake connected with the main canal.

This method of maintaining the irrigation system continued in effect to the year 1929. A dispute then arose among the lateral water users as to who was responsible for the maintenance of the lateral canals. Some lateral water users did not furnish labor or pay their proportional part for the maintenance of the ditches and laterals. In order to provide a plan for the management and upkeep of the ditches and laterals, a majority of the stockholders taking water from the laterals executed and delivered to the corporation what was designated a unilateral agreement in which a majority of such lateral water users, owners and stockholders using the water, appointed and authorized the Board of Directors of the McCammon Ditch Company as manager of such laterals for the year 1929, and subsequent years, or until the power was revoked by a majority of the subscribing stockholders, said agreement being as follows:

"Unilateral Agreement"

"We, the undersigned who received water from the McCammon Ditch Company, which said water is distributed to us from the company's main canal into that certain lateral owned by us and which extends from _____ (description) to _____ hereby authorize, appoint, select and direct The Board of Directors of McCammon, Bannock County, Idaho, as managers of such lateral for the year 1929, with all the power to do each and everything necessary and requisite for the orderly distribution of the water through said lateral and for the maintenance and repair of said lateral hereby agreeing to pay, upon demand, our pro rata share for work and labor done and materials, if any bestowed upon said lateral or used in the distribution of said water.

"Dated this 1st day of April, 1929.

"This contract to be in force until revoked by a majority of stockholders of said lateral.

"Signatures"

Forty-four stockholders signed this or a similar agreement.

Subsequent to 1929 other laterals were constructed by water users and appellant continued to deliver water to the lateral water users measured at the intake in the main canal, and performed the necessary labor, maintained the lateral canals, and charged the respective land owners their pro rata part of the cost and upkeep, the amount charged depending on the upkeep expense necessarily incurred during the year in which the charge was made. This arrangement continued through the year 1946.

In November 1947, the Board of Directors of the corporation made a blanket assessment upon all shareholders of defendant for the repair and maintenance of the canal and all laterals. In other words, a blanket assessment covering all expense of the maintenance and upkeep of the main canal or system, and all laterals, thus requiring all the stockholders to share in the expense whether they were benefited by the water distributed by means of the laterals or not, and not considering whether the corporation owned, as part of its system, all laterals through which the water was distributed.

In November 1948, the resolution imposing such blanket assessment against the stock was disapproved and the Board of Directors reverted to the original plan of managing the laterals and distributing the water therefrom, and levied the maintenance cost under the plan formerly adhered to (1929 to 1946).

By this assessment (November 1948) stockholders and water users securing water from the laterals were assessed a greater amount than those who took water from the main canal, and the lateral water users were assessed different amounts depending on the cost of maintenance of the laterals from which the particular stockholders received water. Thus water users taking water from the main canal were assessed $3.75 a share, and the lateral water users, in addition to this amount, were assessed sums varying in amount from $1.21 a share to $10.72 a share. Thus the assessment for maintenance of the irrigation system was not equally or ratably levied on all shares of stock of the company.

This action was then brought by some of the lateral water users to enjoin the collection of the assessment on any basis other than a blanket assessment, that is, equally against all shareholders in proportion to the number of shares owned, the assessment to include the expense of maintenance of the lateral ditches; and further sought to compel the appellant to absorb the transmission losses of water from the intake of said laterals from the main canal to the land upon which the water was used.

Defendant (appellant) in its answer denied ownership of the laterals and alleged that the method of collecting upkeep and cost, and the distribution of the water had been recognized by all the shareholders of the company from the beginning of the canal operations to and through the year 1946.

By way of counterclaim appellant sought judgment against the respondents for the amounts owed by each of them for assessments imposed for work on the laterals pursuant to the unilateral agreement above.

The court found that the appellant was the owner of the main canal and all laterals, and that the assessment made for the year 1948 against the stockholders of the corporation was not equally or ratably levied and was illegal, and did wrongfully place a burden on the shares of stock of respondents greater than on other shares of stock of said corporation; and further, that the respondents are entitled to the delivery of water to them and each at a point most convenient where the least waste by evaporation and seepage will occur.

In the judgment the court enjoined the sale of the respondents' stock, holding that the assessment was not ratably or proportionately made and that the respondents were not required to pay by means of stock assessment, or otherwise, for the extra work performed on the upkeep and maintenance of the laterals involved, and further required a pro rata assessment to be based upon the amount of the corporate stock owned by each shareholder; and further decreed the assessment of 1948 void and permanently enjoined levying or attempting to levy an equal disproportionate assessment against the stock.

From the judgment appellant prosecutes this appeal.

Twenty-seven separate assignments of error are made which present generally the legal questions herein discussed.

The appellant asserts the right to make an unequal assessment against the stock in 1948 by virtue of extra work done and material furnished in the upkeep and repair of the lateral irrigation ditches. Nowhere in the unilateral agreement above referred to is the stock of the signers pledged for the payment of this extra work, and none of the signers of said agreement by its terms, or otherwise, agreed that payments to the company for such extra work and upkeep could be collected by an assessment against the stock so held by the signers. By the terms of the unilateral agreement, the water users agreed "to pay, upon demand, our pro rata share for work and labor done and materials, if any, bestowed upon said lateral where used in the distribution of said water".

The company having performed the work and furnished the materials contemplated by said agreement, would have a claim on contract against the signers for such work, labor and material, but the same could not be collected by an assessment levied against the stock.

Assessments against the stock made to maintain the system owned by the company, as distinguished from extra work and upkeep on privately owned laterals, would have to be uniform and in ratable amounts, and a call which requires some shareholders to pay a higher rate than others cannot be enforced. Sec. 42–2201, I.C. expressly provides: " * * * assessments and charges [of irrigation corporations] shall be equally and ratably levied * * * based upon the number of shares or water rights held or owned by the owner of such land as appurtenant thereto or may be based upon the amount of water used * * *."

In Seyberth v. American Commander Mining & Milling Co. Ltd., 42 Idaho 254, 245 P. 392, 396, this Court quoted with approval from Great Western Telephone Company v. Burnham, 79 Wis. 47, 47 N.W. 373, 24 Am.St.Rep. 698; "But we fully agree with the appellants' counsel that any call or assessment made upon the shares must be uniform, and in ratable amounts, and that any call or assessment which requires some shareholders to pay a higher rate than other shareholders is unjust, and should not be enforced. We have referred to the averment of the complaint which states that some of the stockholders have paid $10, or 40 per cent., on each share of stock held by them, while many of the stockholders have never paid more than '50 cents, or 2 per cent., on a share. It requires no argument to show that such a call or assessment on the stock is grossly unequal and unjust."

In Morawetz on Private Corporations, V. 1, 2nd Ed. p. 155, par. 154, the author states the rule as follows: "Justice between the shareholders of a corporation requires that all the shareholders should contribute in respect of their shares at the same time and in ratable amounts; a call requiring some shareholders to pay in more than others would therefore be invalid. But if some shareholders have already contributed more than others, it would be not only the right, but the duty, of the directors to make calls upon the other shareholders in such amounts as to equalize the contributions of all."

See Also 18 C.J.S., Corporations, § 486, page 1160.

Neither could the stockholders who signed the unilateral agreement, require other stockholders or non-signers, who received no benefits therefrom, to pay a greater amount not authorized by charter, the by-laws, or by law.

■ Hence we conclude that the assessments made against the lateral water users' stock in an amount greater than other stockholders and not prorated among all the stockholders were illegal. For the maintenance of the system owned by the appellant, the stockholders must all pay ratably and proportionately on the shares of stock owned.

■ Assessments against the stockholders in pro rata proportion for the number of

shares owned should be made for the maintenance of the system, owned by the company, but not to include special benefits conferred upon lateral water users for extra work done because of the unilateral agreement.

Appellant's next assignments of error present the general contention that the appellant corporation does not own or control the laterals; that the irrigation system consists of the diversion rights and the main canal; that the laterals are not part of the irrigation system of the company; that such laterals are owned by the individual water users. In other words, appellant contends that the water and water rights, and the main canal constitute the irrigation works. Further that the cost and expense of upkeep of the laterals are not "assessments" but are charges made against the lateral water users pursuant to the agreement above set out.

Conversely the respondents contend that the irrigation system and works owned by the company include the laterals and the company should maintain the same "down to the last man" and that the entire cost should be ratably apportioned among all stockholders in proportion to the shares of stock owned by each. In support of this contention respondent cites Colburn v. Wilson, 24 Idaho 94, 132 P. 579 and Gedney v. Snake River Irrigation District, 61 Idaho 605, 104 P.2d 909. These cases are not in point. They discuss the rights of land owners in an *irrigation district* distinguishable from an irrigation project or canal system.

■ An irrigation district is a quasi public corporation. There is no stock. Assessments are made against the land. Secs. 43–305 and 43–306, I.C. as amended 1951, S.L. p. 65, Ch. 48.

■ The apportionment of cost to be assessed against the land in an irrigation district depends on benefits which have been previously adjudicated and determined. Sec. 43–305, I.C.

Appellant here is a private corporation, organized under the general laws of the state. Hence the cases cited are not authority in the matter before us.

To prove appellant's ownership of the laterals, respondent offered in evidence Exhibit "S", minutes of stockholders' meeting held March 1, 1920; Exhibit "I", stipulation made between the attorneys in a suit, Union Grain & Elevator Co. v. McCammon Ditch Co.; Exhibit "J", answer in the same case; Exhibits "A" and "B", two mortgages executed by McCammon Ditch Co.; Exhibit "U", deed from Rowe and wife to Clegg Raymond, dated January 15, 1923; Exhibit "T", agreement dated February 26, 1917, in which Rowe contracted to sell land and 7 shares of stock of the company.

The introduction of these exhibits was objected to by appellant, and their admission in evidence is assigned as error.

From these exhibts the court found the appellant to be the owner of the laterals, and that the irrigation system owned by

488

appellant consisted of the water right, the main canal and all laterals.

■ This finding being based on documentary evidence, and appellant having specified in assignments of error that the finding is not supported by the evidence, this Court will examine and weigh the evidence the same as if the case were being tried de novo, and this Court may determine the facts from the record.

■ Hence the rule that the appellate court will not disturb findings based on substantial evidence though in conflict, does not apply where the finding is supported by documentary evidence only. Phipps v. Boise Street Car Company, 61 Idaho 740, at page 747, 107 P.2d 148, with collection of authorities.

Exhibit "S" above referred to, minutes of stockholders' meeting held March 1, 1920, was a motion by one of the stockholders of appellant "that the McCammon Ditch Company absorb the three laterals, South lateral to Jensen's field (head Gates); middle lateral to a point * * * North lateral to a point * * *". This motion was amended to extend absorption where "interest diminishes to one man". This motion carried.

Exhibit "U", deed from Rowe and wife to Raymond transferred nothing to the McCammon Ditch Company, and we are unable to determine where it has any bearing on the issues or supports the finding made.

The same may be said of Exhibit "T", agreement dated February 26, 1917, in which Rowe contracted to sell land and 7 shares of stock of the company.

The answer in the suit of Union Grain & Elevator Company v. McCammon Ditch Company, Exhibit "J", could in no sense be construed as an instrument conveying title to real estate. If the lateral water users owned the lateral ditches, an agreement between third persons could not divest the owners of title.

The same may be said of the stipulation between the attorneys in another suit, plaintiffs' Exhibit "I".

The mortgages, Exhibits "A" and "B" made by the McCammon Ditch Company to E. C. White and Max D. Cohn, after describing the property mortgaged, contain the words "one lateral extending in a general westerly direction * * * for a distance of approximately three miles and the other lateral extending in a general northeasterly * * * for a distance of approximately three miles * * *" are not instruments that in anywise bind the owners of the laterals herein, if individually owned.

■ Irrigation ditches and water rights are real property and thus can only be conveyed and transferred as other real property. Title to real estate may be transferred by contract or deed of the owners, adverse possession, or condemnation, or by operation of law. Sec. 9–503, I.C.; Ada County Farmers' Irrigation Co. v. Farmers' Canal Co., 5 Idaho 793, 51 P. 990, 40 L.R.A.

485; Burnham v. Freeman, 11 Colo. 601, 19 P. 761.

It is contended that Exhibit "S" above referred to shows that the company absorbed the laterals. The minutes and proceedings of the company of March 1, 1920 (Exhibit "S") show clearly that the company at that time did not own or claim to own the lateral ditches and exercised no control and did not maintain or attempt to maintain the same. Further the expense of maintenance of these laterals was thereafter, to the year 1947, paid for by the lateral water users, and subsequent to 1929 the McCammon Ditch Company was paid by the lateral water users the expense of upkeep and repair, and the minutes referred to could not transfer the title from the owners to the McCammon Ditch Company.

We know of no method of transferring title to real property by "absorption" and the minutes (Exhibit "S") were never so construed by the stockholders. The unilateral agreement of 1929 above set out clearly shows that the owners of the laterals and the McCammon Ditch Company at all times considered the title as being in the individual landowners. Hence we conclude the exhibits do not support the finding of ownership in the appellant.

In the trial court's decree he found all transmission losses from the intake of the lateral from the main canal to the land of the individual water user should be borne by the appellant. This order and finding is assigned as error.

By this order the appellant company was required to deliver water and sustain seepage and evaporation losses over and through canals which it does not own.

The individual users constructed the lateral ditches through their own land and from there to various tracts to be irrigated. The appellant company had nothing to do with the construction and as above stated never claimed ownership of the laterals. Many of the ditches and laterals extend long distances from the main canal.

Water used by the various consumers has heretofore been measured at the intake of the laterals from the main canal.

Respondent to sustain the finding and decree cites Sec. 42–905, I.C. reading as follows: "Any person, association or corporation which may contract to deliver a certain quantity of water to any party or parties, shall deliver the same to such party or parties, together with a reasonable and necessary allowance for loss by evaporation and seepage, at some convenient point on the main ditch, canal or reservoir of said person, association or corporation, or on any branch or lateral thereof belonging to the owner or owners of such ditch, canal or reservoir."

In the case before us the water users constitute the personnel of the corporation. The landowner is entitled to his proportionate part of the water represented by the number of shares of stock owned by him. The total quantity to which all stockholders

are entitled in the aggregate amounts to 68.95 cu. ft. of water per second for the irrigation of 2447.57 acres. This water is distributed through ten laterals or ditches which connect with the main canal. There is no showing and it is not contended that these outlets from the main canal are not at the most convenient point for the delivery of the water. There is no contract separate from the by-laws and charter between the corporation itself and the individual water users.

■ It is the duty of the company to turn into each of the ten laterals which connect with the main canal the total quantity of water to which the stockholders and land owners using water from that particular ditch or lateral are entitled. From that point the water is for the use of the individual stockholders and seepage and evaporation from that point must be borne by them.

■ Seepage and evaporation losses from the point of diversion from the Portneuf river and the point where it is delivered from the main ditch must be proportionately borne by all water users.

After the water is delivered into the main laterals, the seepage and evaporation losses must be borne pro rata by the water users from the particular lateral through which the water runs. Cronwall v. Talboy, 45 Idaho 459, 262 P. 871.

Appellant on its cross-complaint is entitled to a personal judgment against the respondents who signed the unilateral agreement for their pro rata share of the extra cost and expense incurred in maintaining the laterals, and for work and labor done and material furnished by the company because of the unilateral agreement, but the stock of the individual signers is not pledged for these amounts.

The order granting the restraining order prohibiting the sale of the stock where disproportionately assessed is affirmed; in other particulars the judgment is reversed. The trial court should enter judgment in accordance with the views herein expressed. Costs to appellant.

GIVENS, C. J., and PORTER, TAYLOR and THOMAS, JJ., concur.

On Rehearing

KEETON, Justice.

After filing the opinion in this matter, a rehearing was granted, supplemental briefs were submitted, and the case was reargued.

Respondents contend that if the evidence were insufficient to sustain a finding that the McCammon Ditch Company owned the laterals, it was likewise insufficient to sustain a judgment that the respondents owned them.

The complaint specifically alleged "that the defendant corporation (appellant) is the owner of the main canal and laterals whereby the water decreed as above set forth is diverted from the Portneuf River

and is conducted to and upon the lands of its stockholders. * * *"

■ The answer admitted the ownership of the main canal and the diversion rights, but denied ownership of the laterals. Hence, the issue presented was the ownership of the laterals by which the water was distributed to the lands of the stockholders. The burden of proof was upon respondents to prove ownership. The whole crux of this lawsuit is that respondents did not prove this allegation with sufficient competent evidence.

Respondents further urge that the original opinion overlooked and did not take into consideration Plaintiffs' Exhibit R, a quitclaim deed dated June 28, 1901, by which the original appropriators conveyed their water rights "and particularly any and all rights in and to ditches constructed by the above named grantors while associated together as a partnership and used for the diversion and distribution of the water claimed in the notice of appropriation" to appellant McCammon Ditch Company.

The deed by its terms conveyed: "* * * all rights in and to ditches constructed by the above named grantors while associated together as a partnership and used for the diversion and distribution of the waters claimed * * *."

The difficulty with respondents' contention is that there is absolutely no evidence showing what ditches had been constructed and had been used when the landowners operated as an association and, as pointed out in the original opinion, many of the laterals and canals were constructed by the landowners subsequent to the time the corporation acquired the irrigation system.

■ It is contended that a new trial should be ordered, so that this proof could be submitted. What the new evidence would be, if any, is not suggested and no new evidence is alleged. This Court has on numerous occasions ruled adversely to respondents' contention, the rule being that where a party is entitled to have a verdict directed in his favor at the close of the evidence and the case is reversed, a new trial will not be ordered. See Exchange State Bank v. Taber, 26 Idaho 723, 145 P. 1090; County of Ada v. Clark, 43 Idaho 489, 253 P. 847; Cooper v. Oregon Short Line R. R. Co., 45 Idaho 313, 262 P. 873.

■ Respondents having introduced all of their evidence to prove ownership, they are not as a matter of right entitled to a new trial, particularly where there is no showing of what the new evidence, if any, would consist.

■ Further, the plaintiffs' complaint does not sufficiently describe the laterals. The two main laterals described as running generally north and west from the terminal of the main canal are indefinite and there is no attempt to describe the other lateral at all. It is apparent that respondents would have to change their theory of their original action and amend the pleading to

particularly describe the laterals which they now claim are owned by appellant. Further, it should be noted that only a small part of the stockholders of the corporation are parties here, and the radical change contended for by respondents pertaining to the manner for the upkeep of the irrigation system would adversely affect many shareholders not before this Court.

The question in the final analysis presents the proposition of who should pay for the upkeep of the laterals. The opinion simply effectuates the manner and method pursued by the shareholders themselves for many, many years.

The burden of proof being upon respondents to prove the allegations of their complaint, that appellant should be responsible for the maintenance and upkeep of laterals owned by it, there was no evidence sufficient to prove ownership of the laterals in the appellant, hence no judgment could be entered for the respondents.

As pointed out in the original opinion, statutes which cover the rights of landowners in an irrigation district or water users coming under the provisions of the Carey Land Act are not in point on the question presented for decision.

Respondents again refer to Sec. 42–905, I.C. The opinion originally filed is in accordance with and follows this section.

By the provision of Secs. 42–907, 42–908, and 42–909, I.C., the right of lateral water users to provide for the management of the laterals, upkeep, and distribution of the water therefrom is specifically recognized. It seems to us that this is exactly what the water users attempted to do by the unilateral agreement set forth in the original opinion. Sec. 42–1301, I.C., among other things, provides: "Where three or more parties take water from same canal or reservoir at the same point to be conveyed to their respective premises for any distance through a lateral or distributing ditch or laterals or distributing ditches such parties shall constitute a water users' association known as 'Water Users' Association of Lateral or Laterals.' "

The above cited and quoted provisions contemplate the water users may organize, and this is what was done, or attempted to be done, by the agreement signed by a large majority of the shareholders. (See original opinion.)

Respondents further complain of allowance of costs to appellant on appeal.

Chief Justice GIVENS, Justices TAYLOR and THOMAS hold each party shall pay his own costs. Justices PORTER and KEETON hold costs should be awarded to appellant.

Except as to costs on appeal, all the Justices concur, and adhere to the conclusion reached in the opinion filed November 15, 1951.