748 P.2d 381

J.M.F. TRUCKING, INC.,
Plaintiff-Respondent,

v.

CARBURETOR & ELECTRIC OF LEW-
ISTON, INC., Defendant-Respondent,

and

Freightliner Corporation,
Defendant-Appellant.

J.M.F. TRUCKING, INC.,
Plaintiff-Appellant,

v.

CARBURETOR & ELECTRIC OF
LEWISTON, INC., Defendant,

and

Freightliner Corporation,
Defendant-Respondent.

Nos. 15969, 16290.

Supreme Court of Idaho.

April 22, 1987.

On Denial of Petition for
Rehearing Jan. 21, 1988.

Kim Jay Trout, Randall, Blake, Cox, Ris-
ley & Trout, Lewiston, for Freightliner.

John R. Stegner, Clements, Brown &
McNichols, (appeared), Lewiston, and Di-
ane M. Hermanson, Paine, Hamblen, Coffin
& Brooke, (argued), Spokane, Washington,
for J.M.F.

Jerry V. Smith, Lewiston, for Carburetor
& Elec.

HUNTLEY, Justice.

By this appeal we are called upon to determine whether the Findings of Fact and Conclusions of Law entered by the trial court provide an adequate foundation for the judgment entered, or whether the findings and conclusions are so internally inconsistent and so lacking in findings as to specific issues of fact necessary to a resolution of the case that it is necessary to reverse and remand for new trial, the trial judge having retired.

On April 7, 1981, J.M.F. Trucking, Inc. purchased a Freightliner truck from an independent dealer of Freightliner. Freightliner's warranty on the truck was good for 100% of repairs or replacement during the first 20,000 miles or twelve months. A separate warranty for the engine was provided by Caterpillar Corporation for the engine which it had supplied.

After delivery, J.M.F. had Carburetor & Electric of Lewiston, Inc. modify the high beam headlights by installing aircraft landing lights. Carburetor & Electric altered the circuitry by replacing the twenty amp circuit breaker with a thirty amp circuit breaker, and by replacing the factory relay with a "heavy duty" relay. J.M.F. had had such modifications performed on all of the trucks in its fleet.

Some forty-one days after purchase, while a J.M.F. driver was operating the truck, a fire began under the dashboard of the truck. The driver stopped the truck, turned off the motor, lights, and other electrical devices. Efforts to put out the fire failed and the truck was destroyed. At the time of this accident, the truck had been driven 13,689 miles.

J.M.F. filed suit against Freightliner on warranty, negligence and strict product liability theories. Freightliner filed cross-claim against Carburetor & Electric, alleging that repairs to the headlamp circuitry of the truck done by Carburetor & Electric were negligently and improperly done and proximately caused the fire. Caterpillar Corporation, the manufacturer of the truck engine, was neither named as a party defendant by J.M.F. nor joined by any other party.

J.M.F. alleged that the truck fire began as a result of an electrical failure. However, at trial, a Carburetor & Electric employee, Jim Luper, put forth a new theory to explain the origin of the truck fire: a fuel generated fire due to a faulty fuel solenoid valve. Freightliner's expert witness, Norman Buske, maintained that the fire was either of electrical origin and due to faulty headlight circuitry, or might have begun in the engine. An expert witness provided by J.M.F., Dr. Ernest Corp, initially testified that, in his opinion, the fire was electrical in origin. However, after hearing Luper's testimony regarding the precise wiring of the electrical circuitry, as well as the testimony of the truck driver that, at the time the fire began, the headlights were on low beam, Corp modified his opinion to agree with Luper that the fire was probably the result of a faulty fuel solenoid valve. Freightliner's expert, Norman Buske, also admitted that his own theories were less tenable if the headlights were, indeed, on low beam when the fire began.

This morass of conflicting evidence led to the trial court's failure to rule as to which of several possible causes of the fire was, in fact, the cause.

The trial court did explicitly find that the repairs by Carburetor & Electric did not contribute to the cause of the fire and entered judgment in favor of Carburetor & Electric on Freightliner's cross-claim. No appeal has been filed from that judgment. It also found that the truck was delivered with defective wiring. The trial court concluded that Freightliner breached its express warranty to J.M.F. that the truck would be free of defects; and that the truck was both in a defective condition and unreasonably dangerous when delivered to J.M.F., causing the fire during normal use of the truck and leading to its total destruction. J.M.F. was awarded $71,338.85 (which constituted the cost of replacing the truck minus $5,000 salvage value). In sum, the trial court held for J.M.F. on warranty and strict liability grounds. We will first address the validity of the trial court's Findings of Fact and Conclusions of

Law, and then discuss the effect of the trial court's actions on the warranty and strict liability claims.

Freightliner appeals the trial court's findings that it was liable on theories of breach of warranty and strict liability to J.M.F. Freightliner further appeals the ruling that it be required to pay attorney fees to Carburetor & Electric, that award of attorney fees having been based upon a finding by the court that Freightliner's cross-claim was without merit. In a separate case, consolidated for purposes of this appeal, J.M.F. appeals the trial court's failure to award it attorney fees from Freightliner.

■ Our review of this case has been burdened by Findings of Fact and Conclusions of Law which are internally inconsistent and lacking in the resolution of key factual issues. The trial court "found" that Carburetor & Electric did not cause or contribute to the fire, yet did not find a cause of the fire. The trial court "found" that the evidence indicated that the truck "was delivered with defects in the wiring," yet, again, found no cause of the fire. A finding of causation is imperative to any ruling holding one strictly liable in products liability, as it must be proved that the defect which is the subject of the litigation caused the injury or damage. *Shields v. Morton Chemical Co.*, 95 Idaho 674, 518 P.2d 857 (1974).

Most importantly, much of the evidence pointed to the solenoid valve as the possible cause of the fire. However, no rulings appear in the record as to whether the solenoid valve is properly viewed as part of the engine or part of the fuel system. The resolution of that matter is of some importance because Freightliner specifically warranted the fuel system, while Caterpillar warranted the engine.

■ It is not the province of this Court to sift through conflicting evidence; nor is it our duty to conduct an independent inquiry into causation. Accordingly, we remand for new trial on the issues of whether Freightliner either breached its warranty to J.M.F. or is strictly liable for selling a product in a defective and unreasonably dangerous condition which caused the fire in this case.

■ We next address the trial court's award of attorney fees to Carburetor & Electric. As previously mentioned, Freightliner instituted a cross-claim against Carburetor & Electric upon the theory that the repairs and modifications to the truck, performed by Carburetor & Electric, led in some way to the fire which destroyed the truck. The trial court found that, in view of the evidence presented at trial, Freightliner's continuance of its cross-claim was frivolous and unreasonable and awarded attorney fees to Carburetor & Electric pursuant to I.R.C.P. Rule 54(e)(1). While normally the trial court's award of attorney fees is accorded a great degree of deference as being within its unique expertise and discretion, *Everett v. Trunnell*, 105 Idaho 787, 673 P.2d 387 (1983), we cannot sustain such an award where the record itself discloses that the claim was not frivolously pursued. At the close of trial, Carburetor & Electric moved to dismiss Freightliner's cross-claim. At the same time, J.M.F. agreed to dismiss its claim against Carburetor & Electric, and the J.M.F. motion to dismiss Carburetor & Electric was granted. However, as between Carburetor & Electric and Freightliner, the trial court refused to grant Carburetor & Electric's motion to dismiss the cross-claim, stating: "I think we still have some disputed facts here...."

■ It is simply inconsistent and arbitrary for the trial court to have denied the motion to dismiss the cross-complaint, stating that reasonable factual conflicts existed sustaining the claim, and to later allow an award of attorney fees on the basis that the cross-claim was frivolously and unreasonably pursued. We therefore reverse the award of attorney fees to Carburetor & Electric.

In the separate case, consolidated for purposes of this appeal, J.M.F. appealed the trial court's failure to award it attorney fees. J.M.F. contends that it is entitled to attorney fees from Freightliner pursuant to I.C. § 12–120(3), which provides for fee awards to parties in actions on a contract

relating to the purchase or sale of goods. J.M.F. argues that, since the trial court found that Freightliner was liable for breach of warranty on its contract with J.M.F. relating to the purchase of the truck, § 12–120(3) applies. We do not reach the merits of this contention, because we have remanded the warranty issue for new trial and any discussion of attorney fees on this issue is premature.

Reversed and remanded for new trial.

Costs to Freightliner, no attorney fees awarded.

SHEPARD, C.J., and DONALDSON, BAKES and BISTLINE, JJ., concur.

BISTLINE, Justice, on Denial of Petitions for Rehearing:

The other members of the Court have voted to deny the petitions for rehearing which have been filed by J.M.F. Trucking, Inc. and Freightliner Corporation. Accordingly, the petitions will be denied, and the case will be remanded and an entire new trial will take place, notwithstanding that the thrust of both parties is that there should not and need not be a second trial. I tend to be in accord with the views of counsel for the respective parties, and will explain why after first making the observation, as has been stated on previous occasions that counsel who have been involved in the litigation will know the most about it.

There is in J.M.F.'s brief submitted after receiving the Court's opinion some cogent argument which is deserving of far more attention that it has received.

This Court has reversed and remanded *J.M.F. Trucking, Inc. v. Freightliner* for retrial. In its Memorandum Opinion requiring this case to be retried, this Court has not addressed the legal and evidentiary dilemma that was presented to the trial court. The problem is that the subject of this lawsuit, a chip truck, was substantially destroyed by fire, limiting the ability of experts, attorneys and the trial court judge to determine the specific cause of the fire.

This Court states in its Memorandum Decision, page 383:

Our review of this case has been burdened by findings of fact and conclusions of law which are internally inconsistent and lacking in the resolution of key factual issues.

We intend to demonstrate to you that the findings of fact and conclusions of law are not internally inconsistent. However, this Court's position that specific factual issues lack resolution is well taken. The attorneys, the clients and the trial judge were equally frustrated by the lack of resolution of specific factual issues. However, that lack should not fall to the benefit of the defendant Freightliner.

In seeming to require a finding of specific defect, the Supreme Court asks that the virtually impossible now be accomplished by the parties. The truck is destroyed. Experts have poured over and over the evidence. All the facts with respect to this truck have been sifted through by the parties and the trial court. *What remains is the perpetual plaintiff's problem in cases where a product is destroyed by its own defect— difficulty in proving specifics.* The facts of this case, and like cases, demand as a matter of fairness that the burden at some point shift to the defendant to prove that it did not cause the fire—a burden which the defendant Freightliner did not meet at trial.

. . . .

Before trial, plaintiff's expert, Atwood, examining what evidence there was concluded with reasonable scientific certainty that an electrical fire caused the truck's destruction. Defendant Freightliner's expert Buske likewise, before trial, found that it was an electrical fire; however, Freightliner identified the fire's cause as Carburetor & Electric repairs and plaintiff's modification to the circuitry. Carburetor & Electric's expert before trial likewise concluded that it was an electrical fire but ruled out Carburetor & Electric's repairs as the cause. Therefore, as the litigants marched into the courtroom for trial it is clear to

everyone that the issue was: whose electrical circuitry caused the fire? The opening statements reflect such a condition (e.g., Tr.Vol. I, pp. 24–28; pp. 32–34).

J.M.F.'s attorney, with the advantage of deposition transcripts, knew that Freightliner's own expert Buske was going to have to admit that if the high beam circuits were off, that the fire could not have been caused by the high beam circuits and therefore J.M.F.'s modifications to the high beam circuit and Carburetor & Electric's repairs to the high beam circuit were going to be ruled out as a cause of the fire as long as the trial court believed that the high beam circuits were turned off at the time of the occurrence. J.M.F.'s attorney was also confident that the evidence that the high beam circuits were off and that the truck was operating only on low beam was consistent with all the circumstances at the time of the occurrence. The trial court so found. (SR p. 23)

Therefore, going into trial the plaintiff's attorney was confident that Freightliner itself would admit that it was an electrical fire and by its own expert testimony, impliedly eliminate Carburetor & Electric and plaintiff as contributing causes when he had to admit the high beam circuitry was not at fault if it was turned off. This in fact happened. (Tr.Vol. II, pp. 542–544). Therefore, with Freightliner's admissions, the case was won before it started. There was no need for plaintiff to call its own expert. Plaintiff could rely on the dual testimony of Freightliner and Carburetor & Electric's experts each alleging an electrical fire, each admitting a truck with a history of electrical defects, and each eliminating Carburetor & Electric's and plaintiff's modification to the high beam system as causing the electrical fire.

. . . .

The trial court, in accord with this evidence, found as a matter of fact that "the truck burned totally (SR, p. 23)". This finding was supported by substantial evidence. The evidence showed the truck had a variety of electrical problems since day of delivery by manufacturer to use. At the time of the fire the evidence indicated that there was a glow under the dash in the area of electrical wires. (Tr.Vol I, pp. 183; p. 246) The truck is totally destroyed by fire such that a definitive investigation of causation is impossible.

. . . .

With abundant proof of electrical defects, a fire consistent with electrical defects, a finding that the fire resulted from a defect, should not the burden shift to the manufacturer to prove that it was not a defect it was responsible for that caused the loss? Under these threshold circumstances, *when the evidence necessary to resolve the alternative theories of causation has been destroyed, should that inability provide a safe harbor for the manufacturer of defective products* or should that inability accrue against the party who designed, constructed and had the most intimate knowledge and therefore ability to explain the cause?

The law, both in the State of Idaho and in other jurisdictions, recognizes the plaintiff's difficulty and meets it head on. *We request this Court not abdicate a responsibility to establish the legal standard to be applied when the facts present this difficult issue.*

Rather, in this case this court should hold the plaintiff's burden in a products liability case is to establish by direct or circumstantial evidence the following elements: (a) malfunction of the product; (b) absence of abnormal use; (c) absence of the evidence of reasonable secondary causes which would eliminate the liability of the defendant. *Farmer v. International Harvester Co., supra; Cornell v. Ford Motor Co.,* [241 Pa.Super. 129] 359 A.2d 822 (Pa., 1976); *Jacobson v. Broadway Motors, Inc.,* 430 S.W.2d 602 (Kan. Ct.App.1968); *Cassisi v. Maytag Co.,* 396 So.2d 1140 (1981); *Winters v. Sears, Roebuck & Co.,* 554 S.W.2d 565, 571 (Mo. App.1977).

This Court should hold that evidence of age of the product, length of its use, severity of its use, state of its repair, expected useful life and nature of the accident are relevant to the issue of causation and when evidence has been destroyed by the accident itself become of primary significance. *Farmer v. International Harvester Co., supra; Cornell v. Ford Motor Co., supra; Cassisi v. Maytag Co., supra.*

A large business enterprise, which makes a general warranty that it will deliver a product without defect and then claims the protection of an exculpatory warranty disclaimer, bears the burden of proving the facts came within the exclusion. *DeCoria v. Red's Trailer Mart, Inc.,* 5 Wn.App. 892, 491 P.2d 241 (1972 [1971]); other cites: *Noel Transfer and Package Delivery Service, Inc. v. General Motors Corp.,* 341 F.Supp. 968 (Dist. Minn.1971 [1972]). The Court should bear in mind that Freightliner had every incentive at trial to meet this exculpatory burden but in fact did not.

J.M.F. Trucking, Inc., requests that the Court reconsider its decision reversing and remanding the case of J.M.F. Trucking, Inc. v. Freightliner for retrial. In making this request, J.M.F. urges the Court to meet head on the realities and the frustrations presented by the facts of this case and to address the legal issues presented when the circumstances make proof of specific cause difficult if not impossible. (emphasis supplied).

Responding to the foregoing argument that there should not be a retrial, Freightliner agrees, albeit on the basis that:

Just as the Supreme Court decided in *Hale v. McCammon Ditch Company,* 72 Idaho 478, 244 P.2d 151 (1951), here, where J.M.F. introduced all of its evidence on causation and failed to prove the same, *they are not,* as a matter of right, *entitled to another trial to introduce the same evidence.* J.M.F.'s failure to meet its burden of proof and the Supreme Court's reversal of Judge Maynard's decision thus requires dismissal of J.M.F.'s claims rather than remand for new trial.

Because of J.M.F.'s failure to meet its burden of proof, Judge Maynard was unable to find facts which were sufficient, as a matter of law, to support a judgment for J.M.F. Judge Maynard's error was *one of law* which was corrected by the Supreme Court's reversal of his decision.

J.M.F. has presented all of its proof, and failed to meet its required burden. Therefore, fairness, justice, and prior decisions of this Court require J.M.F.'s complaint be dismissed. (emphasis supplied).

The brief filed by Freightliner in support of its petition for a rehearing complains of the statement in the Court's opinion that "No appeal has been filed from that judgment [in favor of Carburetor & Electric on Freightliner's cross-action]." Freightliner for proof of its contention points to specified pages of its opening brief where it argues error on the part of the trial court in admitting the testimony of Carburetor's expert, Mr. Buske. Better proof than that, however, is its Notice of Appeal which was directed to Carburetor & Electric and its attorney, as well as to J.M.F. and its attorneys. Vol. 2 Record, p. 180. Then, too, there is the fact that the caption of this Court's opinion shows Carburetor as a respondent on Freightliner's appeal. That error in the Court's opinion, attributable to *five* justices, does not reflect too creditably on the Court, or lend any inference that there was as much participation in the opinion as might be desired by the litigants. Carburetor very likely wants to know where it stands on the new trial which this Court has directed will take place, which may be the reason why it, too, has lodged its Petition for Rehearing and requested leave of the Court for an untimely filing of the same. And, as might be expected, we all have been furnished with Carburetor's brief in answer to what it terms ISSUES RAISED BY FREIGHTLINER'S APPEAL AS TO CARBURETOR & ELECTRIC. In 18 pages it discusses the "Sufficiency of Evidence to Support the Finding of No Negligence on the Part of Carburetor & Electric." Unfortunately, but obvious to

the extreme, five of us are guilty of issuing an opinion declaring that no appeal was taken from the judgment in favor of Carburetor & Electric—which to some may suggest that the briefs and the record were not too closely perused.

Turning to the more significant contentions of Freightliner's brief in reaction to the mandate of being put to a new trial, it argues much as it did in its response to the J.M.F. petition for a rehearing. A primary argument is error on the part of the trial court in denying its motion for dismissal:

At the close of J.M.F.'s evidence, Freightliner moved for dismissal because J.M.F. had failed to prove that Freightliner actually and proximately caused the fire. Judge Maynard's denial of that motion was reversible legal error.

The Supreme Court has firmly fixed the law in Idaho requiring that J.M.F., whether proceeding under warranty, negligence, or strict liability in tort, must prove that some identifiable condition for which Freightliner is legally responsible actually caused the fire. *J.M.F. Trucking, Inc., supra,* at 687; *Shield v. Morton Chemical Co.,* 95 Idaho 674, 518 P.2d 857 (1984). J.M.F.'s failure in proof, as found by Judge Maynard, is the factual foundation for the legal conclusion that J.M.F. is not entitled to a second opportunity to retry the facts of the case. J.M.F., whose Findings of Fact Judge Maynard adopted without change, cannot now complain because they give rise to a single conclusion of law which requires dismissal of J.M.F.'s Complaint.

If J.M.F. has failed to meet its burden of proof, the Supreme Court has consistently held that where a party is entitled to a dismissal or directed verdict in his favor at the close of the evidence and the case is reversed, a new trial will not be ordered.

Here, just as in *Chisholm v. J.R. Simplot Co.,* 94 Idaho 628, 495 P.2d 1113 (1972), the Supreme Court may correct Judge Maynard's erroneous refusal to grant Freightliner's Motion to Dismiss at the close of J.M.F.'s case. *Chisholm, supra,* at 630 [495 P.2d 1113]. As the Court stated in *Chisholm:*

The question presented on appeal, therefore, is whether as a matter of law the record contains sufficient evidence to support a . . . verdict in favor of the plaintiffs on their Complaint. . . . *Chisholm, supra,* at 630 [495 P.2d 1113].

Judge Maynard's inability to find what "actually caused" the fire will not support a judgment for J.M.F., and requires dismissal of J.M.F.'s Complaint, just as the Supreme Court affirmed the trial court dismissal of the plaintiff's Complaint in *Chisholm, supra,* at 633 [495 P.2d 1113].

Simply stated, what legal error did Judge Maynard commit which entitles J.M.F. to another opportunity to present the same facts "one more time?"

Anent this Court's decision reversing and *remanding for a new trial,* Freightliner argues:

The Court's April 22, 1987, decision to reverse and remand for new trial cannot be reconciled with the Court's prior decision in *Hale v. McCammon Ditch Co.,* 72 Idaho 478, 244 P.2d 151 (1951).

In *Hale,* The Supreme Court held:

The rule being that where a party is entitled to have a verdict directed in his favor at the close of the evidence and the case is reversed, a new trial will not be ordered.

*Hale, supra,* at 491 [244 P.2d 151].

The Supreme Court went on to state:

Respondents having introduced all their evidence to prove ownership, they are not, as a matter of right, entitled to a new trial . . .

*Hale, supra,* at 491 [244 P.2d 151].

Just as in *Hale,* J.M.F. introduced all of its evidence on causation and they are not, as a matter of right, entitled to another trial to introduce the same evidence. *Hale, supra,* at 491 [244 P.2d 151].

J.M.F. has not even bothered to suggest in its Petition or Memorandum, that it has new evidence. Here, as in *Chisholm,* the facts found by the trial court are not sufficient as a matter of law to

support a judgment in favor of J.M.F. *Chisholm, supra,* [94 Idaho] at 630 [495 P.2d 1113]. Thus, *the Supreme Court, consistent with its decisions in Hale and Chisholm, must reverse and order dismissal of J.M.F.'s Complaint.* (emphasis supplied).

It is readily seen that the parties most heavily involved, i.e., J.M.F. and Freightliner make a good argument against being directed to stand still for a new trial which, although there is no loss to the attorneys involved other than time for which they will be compensated, in honesty and good conscience the attorneys have beseeched the court to understand is not appropriate.

As stated at the outset, I tend to agree with the argument that a new trial should not be ordered. While I only *tend* in that direction, I am adamant that the Court errs in obdurately refusing to allow a rehearing so that counsel can fully reargue the issues and their contentions while at the same time amplifying on their argument against a reversal which requires a second trial. Where we have been furnished excellent briefs, the opportunity for the Court to become even better informed at oral argument should not so readily be eschewed. As appears above, some of that briefing places much reliance on *Chisholm v. J.R. Simplot Co.,* 94 Idaho 628, 495 P.2d 1113 (1972), and *Shields v. Morton Chemical Co.,* 95 Idaho 674, 518 P.2d 857 (1974), the latter of which two cases is cited in the Court's opinion for the proposition there stated (page 383), that "A finding of causation is imperative to any ruling holding one liable in strict products liability, as it must be proved that the defect which is the subject of the litigation caused the injury or damage." *NOT* cited or given any mention in the Court's opinion, but heavily relied upon in the briefing, largely by J.M.F., is the *later* case of *Farmer v. International Harvester Co.,* 97 Idaho 742, 553 P.2d 1306 (1976). To justify the lack of any mention of that case in the opinion of the Court would be a difficult task. The petitions for rehearing have served the utilitarian purpose of requiring that at least this writer take another look at the opinion which he joined. I can no longer join that opinion without there first being a rehearing and further enlightenment, and definitely some clarification and correction of that opinion.

The *Farmer* case was authored by Justice Shepard. All of the other members of the Court joined his opinion, excepting Justice Bakes who dissented, but was unable to articulate his views into an opinion. 97 Idaho 742 at 751, 553 P.2d 1306 at 1315. The *Farmer* case is correctly cited in a law review article by D. Colson, Professor of Law, University of Idaho, for this proposition:

It is not necessary for an injured party to prove a specific defect. A prima facie case is proven by direct or circumstantial evidence of a malfunction of the product and the absence of evidence of abnormal use or reasonable secondary causes which would eliminate the liability of the seller. 18 Idaho L.Rev. 181 (1982).

*Farmer* is also cited in an article by Gary T. Schwartz, Professor of Law, University of California at Los Angeles, published in the New York University Law Review, Vol. 58, number 4, October 1983. In Part III where the Professor discusses the malfunction theory, he writes that it is the proposition that "the plaintiff need not prove the existence of a specific defect, if he can show the product malfunctioned in the absence of abnormal use and reasonable secondary causes." Schwartz, *New Products, Old Products, Evolving Law, Retroactive Law, Id.* at 828–829. He proceeds to explain and differentiate the similarities of the malfunction theory and the doctrine of *res ipsa loquitur:*

The theory is intriguing because of its emphasis on product *performance* as the opening wedge for liability, its employment of an engineering-like concept to describe inadequate performance, and its worthy effort at rendering more manageable the plaintiff's burden of proof. Given the abstract quality of malfunction reasoning, the defect it identifies is undifferentiated; the theory does not require that strict lines be drawn between manufacturing defects and design defects.

Though the malfunction theory was introduced into strict liability by *Henningsen,* its deeper roots lie in the negligence doctrine of res ipsa loquitur. Both res ipsa and the malfunction theory allow a plaintiff to rely on product misperformance in order to prove the existence of a defect in the product as initially sold. Res ipsa, when it applies, additionally enables the plaintiff to rely on that defect in order to prove prior manufacturer negligence. The close relationship between res ipsa and the malfunction theory reveals, once again, the general compatibility of negligence law and strict liability. Nevertheless, judicial wariness about the doubling up of inferences may well have inhibited the deployment of res ipsa in cases of this sort, and the pro-consumer momentum afforded by the adoption of strict liability has undoubtedly propelled the malfunction theory into situations that would have been beyond the reach of res ipsa.

Presenting evidence of a product malfunction is thus one way in which the plaintiff can try to prove that there was a defect in the product at the time of sale—an "original defect."

. . . .

By now, there are an impressive number of holdings dealing with that theory. It was relied on, for example, in *Moraca v. Ford Motor Co.*[1], 66 N.J. 454, 332 A.2d 599 (1975), in which the steering mechanism of a six-month-old car that had been driven 11,000 miles suddenly locked, and in *Cassisi v. Maytag Co.*, 396 So.2d 1140 (Fla.Dist.Ct.App.1981), in which a nineteen-month-old clothes dryer caught fire. 58 N.Y.U.L.Rev. at 829–830 (footnotes omitted).

*Farmer* is found in a footnote listing other cases, and of it, the footnote reads: "in which the steering mechanism of a two-year-old truck tractor that had been driven 116,000 miles suddenly locked."[2] *Id.* at 830–831, n. 207. The Professor's conclusion is that "When a product is new or

nearly new, the time proxy seems sufficiently reliable to render the malfunction theory satisfactory. It accords with common sense, moreover, to assume that in almost all cases the theory loses its force once a product reaches an age of something like three years." *Id.* at 833. The *Farmer* case has been cited in nine A.L.R. annotations and two federal decisions. It seems to be a well reasoned opinion other than mine. So it is in order to turn to the *Farmer* opinion. Ample authority in the text fully supports the headnotes prepared by West Publishing Co., but it is preferred to excerpt certain language from the opinion, omitting the citations, which has been relied upon in the briefs submitted to us, and presumably relied upon by the trial court:

Since our adoption of the doctrine of strict liability, Restatement (Second) of Torts, § 402A (1965), *supra,* we have not been called upon to interpret the meaning of the concepts of "defect" and "unreasonable danger" or to consider the quantum and nature of proof required to establish a products liability case. See *Rindlisbaker v. Wilson*, 95 Idaho 752, 519 P.2d 421 (1974), in which we held the doctrine of strict liability applicable to defects in design but did not have the occasion to reach the issues stated above. In the instant case, however, appellants challenge the sufficiency of the evidence to establish the case required of a plaintiff.

It has been stated that the term "defect" is not susceptible of a general definition but must be considered on a case by case basis. (citations omitted).

Restatement (Second) of Torts, § 402A (Comment g 1965), provides in pertinent part "Defective condition. The rule stated in this Section applies only where the product is, at the time it leaves the seller's hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him." Comment i to § 402A defines "Unreason-

---

**1.** This was precedential authority cited by Justice Shepard in *Farmer.*

**2.** The mileage on the J.M.F. truck was 13,000—and the truck had been driven one month. Tr. Vol. VI, pp. 172–173, 177.

ably dangerous * * * the article must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." Prosser, Torts § 99 (4th ed. 1971) at p. 659 states "the prevailing interpretation of 'defective' is that the product does not meet the reasonable expectations of the ordinary consumer as to its safety." (citations omitted).

... While direct evidence of identifiable defect is the strongest evidence of a product's defective condition, *Bombardi v. Pochel's Appliance & T V Co., supra,* [10 Wash.App. 243, 518 P.2d 202 (1973) ], such evidence of a defect in a product which was present when it left the manufacturer's control will be rare and unusual. Ordinarily, a plaintiff will have to rely upon circumstantial evidence and the inferences arising therefrom based on expert opinion testimony on the condition of the product after the accident. *See, Ford Motor Co. v. Conrardy,* 29 Colo. App. 577, 488 P.2d 219 (1971). The better reasoned cases do not require and we hold that a plaintiff need not prove a specific defect to carry his burden of proof.

A *prima facie* case may be proved by direct or circumstantial evidence of a malfunction of the product and the absence of evidence of abnormal use and the absence of evidence of reasonable secondary causes which would eliminate liability of the defendant. (citations omitted).

The rule which we adopt today relating to the burden of proof and requirements of a *prima facie* case is consistent with the doctrine of strict products liability in tort. (citations omitted).

A distinction need not be drawn between a "defect" and a "malfunction". Proof of malfunction is circumstantial evidence of a defect in a product since a product will not ordinarily malfunction within the reasonable contemplation of a consumer in the absence of a defect. *Sabloff v. Yamaha Motor Co., Ltd., supra,* [113 N.J.Super. 279, 273 A.2d 606,

aff'd 59 N.J. 365, 283 A.2d 321 (1971) ]; *Darryl v. Ford Motor Co., supra* [440 S.W.2d 630]. Testimony of the user or operator of the product as to the circumstances of the event is sufficient to establish malfunction. (citations omitted).

Related to proof of a malfunction is proof that the event in question is not caused by any abnormal use to which the product had been put by user or operator since such proof circumstantially and inferentially indicates that the malfunction of the product is due to the defect alone. (citations omitted). Additionally related is evidence which tends to eliminate reasonable secondary causes. (citations omitted). Of additional relevance are the age of a product and the length of its use, the severity of its use, the state of its repair, its expected useful life and the fact that the source of the malfunction is an enclosed system relatively immune from tampering or alteration once the product leaves the manufacturer's control. The weight of such evidence is normally for the trier of fact. (citations omitted).

In summary the evidence need only be such that it can be said:

> The product itself must be of a type permitting the jury, after weighing in all the evidence * * * to infer that in the normal course of human experience an injury would not have occurred at this point in the product's life span had there not been a defect attributable to the manufacturer.

... A plaintiff need not exclude every possible cause but only reasonably likely causes. (citations omitted). However, it is also clear that the plaintiff will not carry his burden of proof by merely proving the fact of the occurrence of an accident. (citations omitted).

One further aspect of a plaintiff's case is the requirement that he must prove that the defect in the product rendered it "unreasonably dangerous." Restatement (Second) of Torts § 402A, Comment i (1965). Ordinarily, the evidence indicating the presence of the defect in the product or permitting its inference under

all the circumstances will also prove or permit the inference to be drawn that the defective condition of the product made it unreasonably dangerous. (citations omitted). In the case at bar there appears no dispute that if the components of the respondent's truck were defective as alleged, those defects rendered the truck "unreasonably dangerous" as that term is used in the doctrine of strict liability. It must also be established that the product was in defective condition when it left the manufacturer's control, but in the absence of direct evidence, the production of which is always difficult, other evidence negating other causes of failure and making it reasonable to infer that a dangerous condition existed at the time that the defendant had control is sufficient. (citations omitted). Those proof requirements are not significantly at variance from those required to establish by circumstantial evidence the defective condition of the product. (citation omitted). Again, in the case at bar there is evidently no dispute that if any alleged defects in fact existed that such was the case at the time the truck was in the defendant's control.

It should be understood that what has been written is for the sole purpose of suggesting to the other members of the Court that it may very well be that the litigants here involved, and the science of jurisprudence as well, are not well-served by the Court's opinion mandating a new trial, and the Court's obstinate rejection of the argument of all parties to the litigation to at least hold a hearing whereby the court might become better enlightened. In all of my time as an attorney, together with time spent on this Court and thousand of cases reviewed, new, old, and ancient, I cannot remember of another instance where all parties objected to a second trial, and their argument and authority went unheeded and unanswered.

While this case remained with us for consideration of the rehearing petitions, we heard at either the Pocatello or Twin Falls term a similar case which was tried to a jury. In perusing the jury instructions I came across two given instructions, the giving of which was not challenged on appeal. It occurred to me then, and I have so suggested to the other members of the court, and remind them again, that if those instructions are correct statements of the law, some consideration should be made as to the applicability thereof to this case.

Those instructions read as follows:

INSTRUCTION NO. 21

Proof of a malfunction of a product is circumstantial evidence of a defect in the product since the product will not ordinarily malfunction within the reasonable contemplation of a user in the absence of a defect.

INSTRUCTION NO. 13

Evidence may be either direct or circumstantial. It is direct evidence if it proves a fact, without inference, and which it itself, if true, conclusively establishes that fact. It is circumstantial evidence if it proves a fact from which an inference of the existence of another fact may be drawn.

An inference of fact is one which may logically and reasonably be drawn from another fact or group of facts established by the evidence.

The law makes no distinction between direct and circumstantial evidence as to the degree of proof required; each is accepted as a reasonable method of proof and each is respected for such convincing force as it may carry. IDJI (1st ed. 1974).

On comparing these instructions to the language of the *Farmer* opinion, there is definitely a similarity, especially with No. 21.

In sum, on the one hand we have Freightliner arguing seriously that under the theory which it urges is sustained by the evidence and lack of evidence, it is entitled to this Court's judgment finding error on the part of the trial court in not dismissing J.M.F.'s action, and requesting that this Court so direct the trial court. On the other hand we have J.M.F. arguing seriously that under the theory which it argues, and the support of the *Farmer*

case, it is entitled to an affirmation of its judgment.

On some previous occasion mention has been made that petitions for rehearing served the purpose of allowing this court an opportunity to reconsider that which it has done. I am unable to shed any light on the court's refusal to avail itself of that opportunity in this exceptional circumstance where the parties have joined in making it abundantly clear that a second trial will serve no useful purpose. It would not be surprising to learn later on that they stipulated to a dismissal of the action, and laid the record and their briefs before an arbitration panel for a decision.